1  Robert Hamparyan (State Bar No. 181934)
   ROBERT HAMPARYAN, APC
2  275 W. Market Street
   San Diego, CA 92101
3  t. 619.550.1355
   e. robert@hamparyanlawfirm.com
4
   John J. O'Brien (State Bar No. 253392)
5  THE O'BRIEN LAW FIRM, APLC
   750 B Street, Suite 3300
6  San Diego, CA 92101
   t. 619.535.5151
7  e. john@theobrienlawfirm.com
8  Brian M. Holm (State Bar No. 255691)
   HOLM LAW GROUP, PC
9  12636 High Bluff Drive, Suite 400
   San Diego, CA 92130
10 t. 858.707.5858
   e. brian@holmlawgroup.com
11
12 Carrie Goldberg (via Pro Hac Vice)
   C.A. GOLDBERG, PLLC
13 16 Court Street, Suite 2500
   Brooklyn, NY 11241
14 t: 646.666.8908
   e: carrie@cagoldberglaw.com
15
16
   **Attorneys for Plaintiffs**
17

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego

03/13/2017 at 04:51:00 PM

Clerk of the Superior Court
By Richard Day,Deputy Clerk

18              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

19                        **COUNTY OF SAN DIEGO**

20

| | |
|---|---|
| JANE DOE NOS. 1 - 14, inclusive, individuals; | CASE NO.:  37-2016-00019027-CU-FR-CTL |
| Plaintiffs, | **SECOND AMENDED COMPLAINT** |
| v. | |
| GIRLSDOPORN.COM, a business organization, form unknown; MICHAEL J. PRATT, an individual; ANDRE GARCIA, an individual; MATTHEW WOLFE, an individual; BLL MEDIA, INC., a California corporation; BLL MEDIA HOLDINGS, LLC, a Nevada limited liability company; DOMI PUBLICATIONS, LLC, a Nevada limited liability company; EG PUBLICATIONS, INC., a California corporation; M1M MEDIA, LLC, a California limited liability company; BUBBLEGUM | 1. Intentional Misrepresentation 2. Fraudulent Concealment 3. False Promise 4. Negligent Misrepresentation 5. Misappropriation of Name & Likeness [Common Law] 6. Misappropriation of Name & Likeness [Civ. C. § 3344] 7. Intentional Infliction of Emotional Distress 8. Negligence 9. Breach of Contract |

21
22
23
24
25
26
27
28

1

FILMS, INC., a business organization, form unknown; OH WELL MEDIA LIMITED, a business organization, form unknown; MERRO MEDIA, INC., a California corporation; MERRO MEDIA HOLDINGS, LLC, a Nevada limited liability company; and ROES 1 - 550, inclusive,

Defendants.

10. Promissory Estoppel
11. Unlawful & Fraudulent Business Practices [Bus. & Prof. Code §17200]
12. Fraudulent Transfer

Plaintiffs JANE DOES NOS. 1 - 14, inclusive, individuals, (all plaintiffs collectively, "The Plaintiffs") bring this second amended complaint against defendants GIRLSDOPORN.COM, a business organization, form unknown; MICHAEL J. PRATT, an individual; ANDRE GARCIA, an individual; MATTHEW WOLFE, an individual; BLL MEDIA, INC., a California corporation; BLL MEDIA HOLDINGS, LLC, a Nevada limited liability company; DOMI PUBLICATIONS, LLC, a Nevada limited liability company; EG PUBLICATIONS, INC., a California corporation; M1M MEDIA, LLC, a California limited liability company; BUBBLEGUM FILMS, INC., a business organization, form unknown; OH WELL MEDIA LIMITED, a business organization, form unknown; MERRO MEDIA, INC., a California corporation; MERRO MEDIA HOLDINGS, LLC, a Nevada limited liability company; and ROES 1 - 550, inclusive (all defendants collectively, "The Defendants").

## THE PARTIES

1.     Plaintiff JANE DOE NO. 1 is an individual residing in San Diego County, California.

2.     Plaintiff JANE DOE NO. 2 is an individual residing in San Diego County, California.

3.     Plaintiff JANE DOE NO. 3 is an individual residing in Miami-Dade County, Florida.

4.     Plaintiff JANE DOE NO. 4 is an individual residing in Monmouth County, New Jersey.

5.     Plaintiff JANE DOE NO. 5 is an individual residing in Alachua County, Florida.

6.     Plaintiff JANE DOE NO. 6 is an individual residing in St. Tammany Parish, Louisiana.

7.     Plaintiff JANE DOE NO. 7 is an individual residing in Dallas County, Texas.

8.     Plaintiff JANE DOE NO. 8 is an individual residing in San Diego County, California.

9.     Plaintiff JANE DOE NO. 9 is an individual residing in Bexar County, Texas.

10.    Plaintiff JANE DOE NO. 10 is an individual residing in Los Angeles County, California.

11.    Plaintiff JANE DOE NO. 11 is an individual residing in Knox County, Tennessee.

12.     Plaintiff JANE DOE NO. 12 is an individual residing in Charlotte County, Florida.

13.     Plaintiff JANE DOE NO. 13 is an individual residing in Miami-Dade County, Florida.

14.     Plaintiff JANE DOE NO. 14 is an individual residing in Alberta, Canada.

15.     GIRLSDOPORN.COM is a business organization, form unknown, with its principal place of business in San Diego County, California.

16.     BLL MEDIA, INC. is a California corporation with its principal place of business in San Diego County, California.

17.     BLL MEDIA HOLDINGS, LLC is a Nevada limited liability company with its principal place of business in Clark County, Nevada.

18.     DOMI PUBLICATIONS, LLC is a Nevada limited liability company with its principal place of business in Clark County, Nevada.

19.     EG PUBLICATIONS, INC. is a California corporation with its principal place of business in San Diego County, California.

20.     M1M MEDIA, LLC is a California limited liability company with its principal place of business in San Diego County, California.

21.     BUBBLEGUM FILMS, INC. is a business organization, form unknown, with, on information and belief, its "principal place of business" in Port Vila, Vanuatu.

22.     OH WELL MEDIA LIMITED is a business organization, form unknown, with, on information and belief, its "principal place of business" in Port Vila, Vanuatu.

23.     MERRO MEDIA, INC. is a California corporation with its principal place of business in San Diego County, California.

24.     MERRO MEDIA HOLDINGS, LLC is a Nevada limited liability company with its principal place of business in Clark County, Nevada.

25.     On information and belief, GIRLSDOPORN.COM, BLL MEDIA, INC., BLL MEDIA HOLDINGS, LLC, DOMI PUBLICATIONS, LLC, EG PUBLICATIONS, INC., M1M MEDIA, LLC, BUBBLEGUM FILMS, INC., OH WELL MEDIA LIMITED, MERRO MEDIA, INC., MERRO MEDIA HOLDINGS, LLC; and ROES 1 - 250 ("THE ENTITY DEFENDANTS") are entities in the business of online pornography production, distribution, and sales.  On information and belief, THE

3

ENTITY DEFENDANTS own and/or operate numerous online pornography websites, including, without limitation, www.girlsdoporn.com.

26.     MICHAEL J. PRATT ("PRATT") is an individual residing in San Diego County, California. On information and belief, he is a sales agent and representative, and the majority or sole shareholder, managing member, and/or chief executive officer of each of THE ENTITY DEFENDANTS.

27.     ANDRE GARCIA ("GARCIA") is an individual residing in San Diego County, California.  On information and belief, he is a sales agent and representative for each of THE ENTITY DEFENDANTS – as well as a participant and "actor" in their pornography.

28.     MATTHEW WOLFE ("WOLFE") is an individual residing in San Diego County, California. On information and belief, he is a sales agent and representative for each of THE ENTITY DEFENDANTS – as well as a videographer of their pornography.

29.     On information and belief, ROES 251 – 500 are other shareholders, members, officers, sales agents, representatives, videographers, and/or "actors" of THE ENTITY DEFENDANTS.

30.     The Plaintiffs are ignorant of the true names, capacities, and/or liabilities of defendants sued herein as ROES 1 - 550, inclusive, and therefore sue these defendants by such fictitious names and allege that ROES 1 - 550 are responsible in some manner for the occurrences herein alleged.  The Plaintiffs will amend this complaint to allege their true names, capacities, and/or liabilities when ascertained.

31.     In doing all things alleged herein, including, without limitation, corresponding, negotiating, and contracting with The Plaintiffs, The Defendants were agents, servants, representatives, partners, joint venturers, affiliates, parents, subsidiaries, and/or employees of each other in the acts and/or omissions herein alleged.  The Defendants were and are acting within the course and scope of their authority as such agents, servants, representatives, partners, joint venturers, affiliates, parents, subsidiaries, and/or employees and with the permission, authorization, consent, and ratification of each other.

32.     In doing all things alleged herein, including, without limitation, corresponding, negotiating, and contracting with The Plaintiffs, THE ENTITY DEFENDANTS, PRATT, GARCIA, WOLFE, and ROES 251 – 550 acted as alter egos of each other.  In particular, they: (a) commingled their funds and other assets, failed to segregate funds between them, and have without authorization diverted corporate

funds and assets for noncorporate uses; (b) treated each other's assets as their own; (c) issued shares of one other to themselves and third parties haphazardly and without authority; (d) held themselves out as being personally liable for the debts of each other; (e) failed to maintain minutes and corporate records, and confused of the records of the separate entities; (f) used the same business locations and employed the same employees; (g) failed to adequately capitalize the entities; (h) used each other as a conduit for a single venture of themselves; (i) failed to maintain arm's length relationships among themselves; and (j) diverted assets without consideration from/to one another to the detriment of creditors, including The Plaintiffs. Recognition of the privilege of separate existences between these defendants would promote injustice, unfairness, and fraud. Any separateness is to be disregarded. As such, The Defendants are jointly and severally liable in this action as alter egos.

## JURISDICTION AND VENUE

33.     This Court has jurisdiction over The Defendants as they are physically present in San Diego County, California and/or because The Defendants committed the subject acts and omissions in San Diego County, California.

34.     Venue is proper as San Diego County is where The Defendants reside and have their principal place of business, the subject contracts were entered into, and/or the obligations and liability arose.

## FACTUAL ALLEGATIONS

**The Defendants' Business Scam: Lie to Young Women and Con them into Online Pornography**

35.     PRATT, GARCIA, WOLFE and the rest of The Defendants operate a San Diego-based pornography business, which irreparably damages the lives of young women from San Diego and across the country.

36.     The Defendants collectively run pornography websites, the main website being www.girlsdoporn.com, a subscription-based amateur pornography website, which gets more traffic than the San Diego Padres website.

37.     The young women appearing in The Defendants' amateur pornography come from good families, have never appeared in pornography before, are often paying their way through school, and are just beginning their careers and adulthood. So, there is only way The Defendants can convince these women to have sex on film or produce other adult video material: The Defendants lie to them.

38.     The Defendants advertise themselves across the country as a legitimate Southern California modeling agency - on Craigslist and other websites, or even on sham websites they created, e.g., www.beginemodelling.com.  The Defendants ask for the name, age, height, weight, state, city, email, and phone number of each applicant, ask for photos, and, if The Defendants feel they have attracted a proper target, reach out to the women by phone and/or email in order to feel the women out more. Eventually, if a proper target, The Defendants offer the young women thousands of dollars for adult film work.

39.     When the young women ask The Defendants where they will distribute the video, The Defendants assure them that they will not post the video online (or cause it to be so posted), they will not distribute the video in the United States (or cause is to be so distributed), and they will keep each woman anonymous.  The Defendants represent the videos will be on DVDs overseas and for private use.  If needed for convincing, The Defendants provide a reference woman, who previously shot a video (but, whose video is not yet released), to vouch for The Defendants and promise the same security, limited distribution, and anonymity.

40.     In their discussions with these young woman, The Defendants use aliases and mention nothing about their website(s) where they plan to post the videos, or the websites on which they plan to publically promote and advertise the videos.  The Defendants also mention nothing about: (a) all of the other young women whose lives they have irreparably damaged earlier by The Defendants' video publication and promotion; (b) all of the other young women imploring them to stop and to take down their videos; and (c) all of the complaints that they (and their legal counsel) have received from other young women and their families.

41.     After The Defendants lie to the young women, they book rooms (usually under PRATT'S name) at upscale San Diego County hotels, most often at major high-end chains in downtown San Diego (e.g., Hilton, Hyatt, Marriot).  If the young women are not in Southern California, The Defendants pay for their airfare to San Diego (again, usually using PRATT'S name / credit card).

42.     Then, without hotel knowledge and consent, and, on information and belief, without any license or permit whatsoever, The Defendants sneak videography equipment into the hotel – hiding the equipment in large suitcases – in order to produce the amateur pornography.

43.     Once the young women are confined to the hotel room, The Defendants present them with documents to sign: (a) often under duress, coercion, and/or while distracting or rushing them; (b) while continuing to orally misrepresent their intent for the video's eventual distribution; (c) while continuing to fraudulently omit the material facts referenced herein (e.g., that they work for a San Diego-based pornography website that has damaged other young women's lives); and (d) often lying about the purported nature and effect of the documents.

44.     Around one month after filming, despite their earlier representations, The Defendants release the videos on, at least, www.girlsdoporn.com (their monthly subscription-based website) and www.girls-do-porn.com (a free website with clips of the videos that then directs the user to www.girlsdoporn.com).  The Defendants also release/license all or part of the videos all over the internet on a multiple of free pornography websites – in part, to advertise www.girlsdoporn.com with the images and likenesses of the young women.  (Interestingly, and by no accident, GARCIA'S (and any other male participant's) face is never shown in any video.)  Soon thereafter, someone who knows one of the young women will notify them the video is online.  This becomes the first time the young women have ever heard of The Defendants' main website: www.girlsdoporn.com.

45.     When the young women reach out to The Defendants, they discover The Defendants have changed their phone numbers (they use disposable phones and/or changeable Internet phone numbers) and have also used fake names (e.g., PRATT often uses "Mark," GARCIA often uses "Jonathan," and WOLFE often uses "Ben" or "Isaac").  The Defendants then refuse to talk to the women, hang up on them, and/or block their calls.  If the women get in contact with The Defendants' counsel, they refuse to even give The Plaintiffs copies of any documents signed and threaten them with legal action.

46.     After The Defendants cause the videos to be distributed online, The Defendants, their subscribers, and/or Internet stalkers release The Plaintiffs' real names online, usually on blogs followed by "fans" and subscribers of www.girlsdoporn.com.  As a result (of which The Defendants are cognizant), third parties often then stalk, harass, bully, and blackmail the young women and their families – online, by telephone, and in-person.

47.     Because of The Defendants, some of these young women lose relationships with friends, significant others, and family.  Some lose or change jobs, and some are forced to leave their school.

1   Months to years after the videos, many are still harassed by strangers on the Internet.  And almost all

2   have suffered severe psychological and emotional damage -- some have even considered suicide.

3   48.   Below, are more specific facts and claims of fourteen (14) plaintiff young women.

4   **JANE DOE NO. 1**

5   49.   In July 2015, The Defendants posted an advertisement on Craigslist.com in the gigs/modeling

6   section for the Las Vegas area, seeking young women for adult modeling.

7   50.   That same month, JANE DOE NO. 1 responded to the advertisement and corresponded with

8   GARCIA (going by his alias "Jonathan") by email, text message, and telephone.  GARCIA eventually

9   offered her $9,200 for 3 videos.

10   51.   That same month, in July 2015, GARCIA told JANE DOE NO. 1 on the phone that they would

11   not post the videos online, they would not distribute the videos in the United States, and that she would

12   remain anonymous.  GARCIA told her the video would go to *one* "private buyer" overseas in Australia

13   - and would only be in DVD format.  They had her speak with another women, who assured her the

14   videos do not get leaked.

15   52.   On August 3, 2015, September 14, 2015, and September 22, 2015, JANE DOE NO. 1 made

16   adult videos for The Defendants at The Palomar in downtown San Diego, 707 10th Avenue in

17   downtown San Diego, and at the Coronado Island Marriott, respectively.  Before each shoot, GARCIA

18   and WOLFE (going by his alias "Ben"), again, assured JANE DOE NO. 1 they would not post the

19   videos online, they would not distribute the videos in the United States, and that she would remain

20   anonymous.  They assured her there was nothing to worry about, promised her privacy, and said

21   nobody she knew would see the videos.

22   53.   They continued to make these representations when providing her with documents, which

23   GARCIA and WOLFE did not let JANE DOE NO. 1 thoroughly read; they also distracted her and told

24   her the documents merely said the films would be for video format in Australia.

25   54.   After the videos, The Defendants reneged on their promise to pay JANE DOE NO. 1 the $9,200

26   and only paid her $8,200.

27   55.   In October 2015, The Defendants released JANE DOE NO. 1's videos on their website,

28   www.girlsdoporn.com, and other websites, which were then discovered by her high school, college, and

8

**SECOND AMENDED COMPLAINT**

1   graduate school friends and acquaintances – as well her family.

2   56.     Also around October 2015, The Defendants, their subscribers, and/or third parties leaked JANE

3   NO. DOE 1's real name and her contact information (social media, phone, email, etc.) on other

4   websites, including, at least, the blog www.pornwikileaks.com.  JANE DOE NO. 1 was harassed

5   through social media, text message, and phone.  People emailed and called JANE DOE NO. 1's college

6   and graduate school students, faculty, and deans, calling her a "whore, slut, disgrace, etc.," sent links to

7   or screenshots of her videos, and tagged her boyfriend on social media with the video.

8   **JANE DOE NO. 2**

9   57.     In Around February 2015, The Defendants posted an advertisement on Craigslist.com in the

10  gigs/modeling section for San Diego, CA, seeking young women for adult modeling.

11  58.     That same month, JANE DOE NO. 2 responded to the advertisement and corresponded with

12  GARCIA (going by his alias "Jonathan") by email, text message, and telephone.  GARCIA offered her

13  $6,000 for 2 videos.

14  59.     That same month, GARCIA told JANE DOE NO. 2 on the phone that they would not post the

15  videos online, they would not post the video online, they would not distribute the video in the United

16  States, and that she would remain anonymous.  They told her the video would go to "private buyers"

17  overseas and would only be in DVD format.  They further told her the "private buyers" had contracts,

18  which prevented them from sharing or distributing the videos.  They had her speak with another

19  women, who assured her the videos do not get leaked.

20  60.     On February 1, 2015 and February 19, 2015, JANE DOE NO. 2 made adult videos for The

21  Defendants at the Hard Rock Hotel in downtown San Diego and a downtown condo, respectively.

22  Before each shoot, GARCIA and WOLFE (going by his alias "Isaac") assured JANE DOE NO. 2 they

23  would not post the video online, they would not distribute the video in the United States, and that she

24  would remain anonymous.  They assured her there was nothing to worry about, promised her privacy,

25  and said nobody she knew would see the videos.

26  61.     They continued to make these representations when providing her with documents, which

27  GARCIA and WOLFE did not let JANE DOE NO. 2 thoroughly read; they also distracted her and told

28  her they was merely a "tax form" and "privacy agreement."

62.     After the video, The Defendants reneged on their promise to pay JANE DOE NO. 2 the $6,000 and only paid her $5,000.

63.     On or about April 10, 2015, The Defendants released JANE DOE NO. 2's video on www.girlsdoporn.com and other websites, which was discovered by her friends and acquaintances – as well her family.

64.     Also around April 10, 2015, The Defendants, their subscribers, and/or third parties leaked JANE DOE NO. 2's real name and her contact information (social media, phone, email, etc.) on other websites, including, at least, the blog www.pornwikileaks.com.  JANE DOE NO. 2 was harassed through social media, text message, and phone.  She was called her a "whore, slut, disgrace, etc." and people sent her friends and acquaintances links to or screenshots of her video, and tagged her boyfriend on social media with the video.

**JANE DOE NO. 3**

65.     In March 2014, The Defendants posted an advertisement on exploretalent.com, seeking young women for adult modeling in San Diego, CA.

66.     That same month, JANE DOE NO. 3 responded to the advertisement and corresponded with GARCIA (going by his alias "Jonathan") by email and text message.  GARCIA offered her $3,000 to do an adult video.  JANE DOE NO. 3 asked GARCIA where the video would be distributed.  GARCIA told her they would not post the video online, they would not distribute the video in the United States, and that she would remain anonymous.  GARCIA told her the video would be on DVD and only distributed overseas in South America.

67.     On March 23, 2014, JANE DOE NO. 3 made an adult video for The Defendants at the Hilton San Diego Bayfront.  Before the shoot, GARCIA and WOLFE (going by his alias "Ben"), again, assured JANE DOE NO. 3 they would not post the video online, they would not distribute the video in the United States, and that she would remain anonymous.  They assured her there was nothing to worry about, promised her privacy, and said nobody she knew would see the videos.

68.     They continued to make these representations when providing her with documents, which GARCIA and WOLFE said were merely to ensure her privacy and that she would be compensated.

///

**SECOND AMENDED COMPLAINT**

69.   Around July 4, 2014, The Defendants released JANE DOE NO. 3's video on www.girlsdoporn.com and other websites, which were then discovered by her family, friends, co-workers, and employer.

70.   Also around July 4, 2014, The Defendants, their subscribers, and/or third parties leaked JANE DOE NO. 3's real name and her contact information (social media, phone, email, etc.) on other websites, including, at least, the blog www.pornwikileaks.com.  People then harassed JANE DOE NO. 3 through social media, text message, and phone.  She has been shunned and blackmailed by friends and coworkers.

**JANE DOE NO. 4**

71.   In April 2013, The Defendants, going by their alias "Bubblegum Casting," posted an advertisement on Craigslist.com in the gigs/modeling section for Eastern, North Carolina, seeking young women for modeling.

72.   That same month, JANE DOE NO. 4 responded to the advertisement and corresponded with WOLFE by email and text message.  JANE DOE NO. 4 also FaceTimed with WOLFE and GARCIA. WOLFE and GARCIA offered her $2,000 to do an adult video.  JANE DOE NO. 4 asked WOLFE and GARCIA where the video would be distributed.  WOLFE and GARCIA told her they would not post the video online, they would not distribute the video in the United States, and that she would remain anonymous.  WOLFE and GARCIA told her the video would be on DVD and would go only to a video store in Australia.

73.   On April 9, 2013, JANE DOE NO. 4 made an adult video for The Defendants at the downtown San Diego Marriott.  The Defendants booked the room under WOLFE'S name.  Before the shoot, GARCIA and WOLFE, again, assured JANE DOE NO. 4 they would not post the video online, they would not distribute the video in the United States, and that she would remain anonymous.  They assured her there was nothing to worry about, promised her privacy, and said nobody she knew would see the videos.

74.   They continued to make these representations when providing her with documents, which GARCIA and WOLFE did not let JANE DOE NO. 4 thoroughly read; they also gave JANE DOE NO. 4 alcohol and she was intoxicated when signing the documents.

75.     GARCIA and WOLFE then reneged on their promise to pay JANE DOE NO. 4 the $2,000 and only paid her $400 (they gave her stack of cash with twenty dollar bills on top, but clandestinely filled the middle with one dollar bills).

76.     Around June 2013, The Defendants released JANE DOE NO. 4's videos on www.girlsdoporn.com and other websites, including www.pornhub.com, which were then discovered by her family and friends.

77.     Also around June 2013, The Defendants, their subscribers, and/or third parties leaked JANE DOE NO. 4's real name and her contact information (social media, phone, email, etc.) on other websites, including, at least, the blog www.pornwikileaks.com.  People then harassed JANE DOE NO. 4 through social media, text message, and phone.  JANE DOE NO. 4 became depressed, could not leave the house, was bullied, was blackmailed, and her car was vandalized.

**JANE DOE NO. 5**

78.     In August 2014, The Defendants posted an advertisement on Craigslist.com, seeking young women for adult modeling in Gainesville, Florida.

79.     That same month, JANE DOE NO. 5 responded to the advertisement and corresponded with GARCIA (going by his alias "Jonathan") and PRATT or WOLFE (going by the alias "Mike") by email and text message.  They offered her $3,000.00 to do an adult video.  JANE DOE NO. 5 asked them where the video would be distributed.  They told her they would not post the video online, they would not distribute the video in the United States, and that she would remain anonymous.  They told her the video would only go to a private collector in Australia.  They had her speak with another women, who assured her the videos do not get leaked.

80.     On August 29, 2014 and in early September 2014, JANE DOE NO. 5 made adult videos for The Defendants at the Hilton San Diego Bayfront.  Before the shoots, GARCIA and PRATT or WOLFE, again, assured JANE DOE NO. 5 they would not post the video online, they would not distribute the video in the United States, and that she would remain anonymous.  They assured her there was nothing to worry about, promised her privacy, and said nobody she knew would see the videos.

81.     They continued to make these representations when providing her with documents, which they did not let JANE DOE NO. 5 thoroughly read; they told her they were merely documents saying she

1   was sober.

2   82.    Around mid-December, 2014, The Defendants released JANE DOE NO. 5's video on

3   www.girlsdoporn.com and other websites, which were then discovered by her family, friends, and

4   people in her hometown.

5   83.    Also on information and belief, around mid-December, 2014, The Defendants, their subscribers,

6   and/or third parties leaked JANE DOE NO. 5's real name and her contact information (social media,

7   phone, email, etc.) on other websites, including, at least, the blog www.pornwikileaks.com.  People

8   then harassed, threatened, and bullied JANE DOE NO. 5 through social media, text message, and

9   phone.

10  **<u>JANE DOE NO. 6</u>**

11  84.    In May 2016, The Defendants posted an advertisement on Craigslist.com, seeking young

12  women for adult modeling in Baton Rouge, Louisiana.

13  85.    That same month, JANE DOE NO. 6 responded to the advertisement and corresponded with

14  GARCIA (going by his alias "Jonathan") by email and text message.  GARCIA offered her $7,000 to

15  do an adult video.  JANE DOE NO. 6 asked them where the video would be distributed.  GARCIA told

16  her they would not post the video online, they would not distribute the video in the United States, and

17  that she would remain anonymous.  They told her the video would only go to DVDs in Australia.  They

18  had her speak with another women, who assured her the videos do not get leaked.

19  86.    On May 19, 2016, JANE DOE NO. 6 made an adult video for The Defendants at the Coronado

20  Island Marriot.  Before the shoot, GARCIA and ROE 251 (going by his alias "Ted") and The

21  Defendants' makeup artist ("Riva") assured JANE DOE NO. 6 they would not post the video online,

22  they would not distribute the video in the United States, and that she would remain anonymous.  They

23  assured her there was nothing to worry about, promised her privacy, and said nobody she knew would

24  see the videos.  In fact, GARCIA said The Defendants had never had an issue with the videos getting

25  released, going viral, or anyone seeing the videos in the United States.[1]

26  ///

27

28  _____
    [1] Notably, this is a month *after* Jane Doe Nos. 1 - 4 first sued The Defendants (including GARCIA) in this action
    for, among other things, fraud and mass Internet distribution of their videos.

13

**SECOND AMENDED COMPLAINT**

87.     They continued to make these representations when providing her with documents, which GARCIA and ROE 251 did not let JANE DOE NO. 6 thoroughly read, and they told her the documents reiterated what they already discussed.

88.     After the video, The Defendants reneged on their promise to pay JANE DOE NO. 6 the $7,000 and only paid her $4,500.

89.     Around early August 2016, The Defendants released JANE DOE NO. 6's video on www.girlsdoporn.com and other websites, which were then discovered by her family, friends, and people in her hometown.

90.     Also on information and belief, in early August 2016, The Defendants, their subscribers, and/or third parties leaked JANE DOE NO. 6's real name and her contact information (social media, phone, email, etc.) on other websites, including, at least, the blog www.pornwikileaks.com.  JANE DOE NO. 6 became depressed, could not leave the house, and considered dropping out of school.

**JANE DOE NO. 7**

91.     In October 2013, The Defendants posted an advertisement on Craigslist.com, seeking young women for adult modeling in Dallas, Texas.

92.     That same month, JANE DOE NO. 7 responded to the advertisement and corresponded with GARCIA and WOLFE.  They offered her $2,000 to do an adult video.  JANE DOE NO. 7 asked them where the video would be distributed.  GARCIA told her they would not post the video online, they would not distribute the video in the United States, and that she would remain anonymous.  They told her the video would only go to DVDs in Australia.

93.     In October 2013, JANE DOE NO. 7 made an adult video for The Defendants at the Rancho Bernardo Inn.  Before the shoot, GARCIA and WOLFE assured JANE DOE NO. 7 they would not post the video online, they would not distribute the video in the United States, and that she would remain anonymous.  They assured her there was nothing to worry about, promised her privacy, and said nobody she knew would see the videos.

94.     They continued to make these representations when providing her with documents, which GARCIA and WOLFE did not let JANE DOE NO. 6 thoroughly read, and they told her they were merely documents saying the video's distribution was on DVD in Australia only.

95.     On or before July 2016, The Defendants released JANE DOE NO. 7's video on www.girlsdoporn.com and other websites, which were then discovered by her family, friends, and people in her hometown.

96.     Also on information and belief, on or before July 2016, The Defendants, their subscribers, and/or third parties leaked JANE DOE NO. 7's real name and her contact information (social media, phone, email, etc.) on other websites, including, at least, the blog www.pornwikileaks.com.  JANE DOE NO. 7 became depressed, discriminated against, humiliated, and deeply traumatized.

**JANE DOE NO. 8**

97.     In July 2016, The Defendants posted an advertisement on Craigslist.com, seeking young women for adult modeling in San Diego, California.

98.     That same month, JANE DOE NO. 8 responded to the advertisement and corresponded with GARCIA and PRATT or WOLFE by email and text message.  They offered her $2,000 to do an adult video.  JANE DOE NO. 8 asked them where the video would be distributed.  They told her they would not post the video online, they would not distribute the video in the United States, and that she would remain anonymous.  They told her the video was for private use and would not be so used for many years.

99.     On or about July 18, 2016 and August 5, 2016, JANE DOE NO. 8 made adult videos for The Defendants at L'Auberge Del Mar and a condo downtown, respectively.  Before the shoots, GARCIA, PRATT or WOLFE, and The Defendants' makeup artist ("Riva") assured JANE DOE NO. 8 they would not post the video online, they would not distribute the video in the United States, and that she would remain anonymous.  They assured her there was nothing to worry about, promised her privacy, and said nobody she knew would see the videos.  In fact, GARCIA said The Defendants had never had an issue with the videos getting released, going viral, or anyone seeing the videos in the United States.[2]

100.    They continued to make these representations when providing her with documents, which GARCIA and PRATT or WOLFE did not let JANE DOE NO. 8 thoroughly read, and they told her they were merely "protocol" and documents saying, "it was okay to film."

---

[2] This is almost 6 months *after* Jane Doe Nos. 1 - 4 first sued The Defendants (including GARCIA) in this action for, among other things, fraud and mass Internet distribution of their videos.

101.    In or around September 2016, The Defendants released JANE DOE NO. 8's video on www.girlsdoporn.com and other websites, which were then discovered by her family, friends, and people in her hometown.

102.    Also on information and belief, in or around September 2016, The Defendants, their subscribers, and/or third parties leaked JANE DOE NO. 8's real name and her contact information (social media, phone, email, etc.) on other websites, including, at least, the blog www.pornwikileaks.com.  JANE DOE NO. 8 became depressed, could not leave the house, and debated suicide several times.

**JANE DOE NO. 9**

103.    In April 2014, The Defendants posted an advertisement on Craigslist.com, seeking young women for adult modeling in San Antonio, Texas.

104.    That same month, JANE DOE NO. 9 responded to the advertisement and corresponded with WOLFE and PRATT by email and text message.  They offered her $3,500 to do adult videos.  JANE DOE NO. 9 asked them where the videos would be distributed.  GARCIA told her they would not post the videos online, they would not distribute the videos in the United States, and that she would remain anonymous.  When JANE DOE NO. 9 said she did not want the videos online, they said, "No, we wouldn't do that, you'll be fine and protected – it's discreet and professional."  They told her the videos were for a DVD overseas.

105.    In April 2014, JANE DOE NO. 9 made adult videos for The Defendants at La Valencia in La Jolla and at a condo downtown.  Before the shoots, GARCIA and WOLFE assured JANE DOE NO. 9 they would not post the video online, they would not distribute the video in the United States, and that she would remain anonymous.  They assured her there was nothing to worry about, promised her privacy, and said nobody she knew would see the videos.

106.    They continued to make these representations when providing her with documents, which GARCIA and PRATT or WOLFE did not let JANE DOE NO. 9 thoroughly read, and they told her they were merely documents saying, "it was okay to film."

107.    In or around June 2014, The Defendants released JANE DOE NO. 9's videos on www.girlsdoporn.com and other websites, which were then discovered by her family, friends, and

16

**SECOND AMENDED COMPLAINT**

1   employer.

2   108.    Also on information and belief, in or around June 2014, The Defendants, their subscribers,

3   and/or third parties leaked JANE DOE NO. 9's real name and her contact information (social media,

4   phone, email, etc.) on other websites, including, at least, the blog www.pornwikileaks.com.

5   **JANE DOE NO. 10**

6   109.    In March 2016, a prior woman who had just made a film referred JANE DOE NO. 10 to The

7   Defendants.

8   110.    That same month, JANE DOE NO. 10 corresponded with GARCIA and WOLFE by email and

9   text message.  They offered her $5,000 to do an adult video.  JANE DOE NO. 10 asked them where the

10   video would be distributed.  They told her they would not post the video online, they would not

11   distribute the video in the United States, and that she would remain anonymous.  They told her the

12   video was for a private collector in Australia only.  They assured her there was nothing to worry about,

13   promised her privacy, and said nobody she knew would see the videos.  They had her speak with

14   another women, who assured her the videos do not get leaked.

15   111.    On July 12, 2015, JANE DOE NO. 10 made an adult video for The Defendants at The US Grant

16   in San Diego.  Before the shoot, GARCIA and WOLFE assured JANE DOE NO. 10 they would not

17   post the video online, they would not distribute the video in the United States, and that she would

18   remain anonymous.

19   112.    They continued to make these representations when providing her with documents, which

20   GARCIA and WOLFE did not let JANE DOE NO. 10 thoroughly read.

21   113.    GARCIA and WOLFE then reneged on their promise to pay JANE DOE NO. 10 the $7,000 and

22   only paid her $2,000 (saying she looked old and deserved less).

23   114.    In or around November 2015, The Defendants released JANE DOE NO. 10's video on

24   www.girlsdoporn.com and other websites, which were then discovered by her family, friends, and

25   employer.

26   115.    Also on information and belief, in or around November 2015, The Defendants, their subscribers,

27   and/or third parties leaked JANE DOE NO. 10's real name and her contact information (social media,

28   phone, email, etc.) on other websites, including, at least, the blog www.pornwikileaks.com.  People

1    then harassed JANE DOE NO. 10 and her family through social media.

2    **JANE DOE NO. 11**

3    116.    In March 2016, The Defendants posted an advertisement on Craigslist.com, seeking young

4    women for adult modeling in Knoxville, Tennessee.

5    117.    That same month, JANE DOE NO. 11 corresponded with WOLFE or PRATT by email and text

6    message.  They offered her $5,000.00 to do an adult video.  JANE DOE NO. 11 asked him where the

7    video would be distributed.  They told her they would not post the video online, they would not

8    distribute the video in the United States, and that she would remain anonymous.  They told her the

9    video was for DVD in Australia only.  They assured her there was nothing to worry about, promised

10   her privacy, and said nobody she knew would see the videos.  They had her speak with another women,

11   who assured her the videos do not get leaked.

12   118.    On March 29, 2016, JANE DOE NO. 11 made an adult video for The Defendants at a hotel in

13   San Diego.  Before the shoot, GARCIA and ROE 251 ("Ted") assured JANE DOE NO. 11 they would

14   not post the video online, they would not distribute the video in the United States, and that she would

15   remain anonymous.

16   119.    They continued to make these representations when providing her with documents, did not

17   allow her to thoroughly read, and GARCIA represented the documents were "liability stuff and to

18   protect their identities."  In fact, JANE DOE NO. 11 asked GARCIA if anyone had ever found the

19   videos or had seen him in the videos.  He said no.  The Defendants' makeup artist ("Riva") also assured

20   her there was nothing to worry about.

21   120.    Around May 1, 2016, The Defendants released JANE DOE NO. 11's video on

22   www.girlsdoporn.com and other websites, which were then discovered by her family, friends, and

23   employer.

24   121.    Also on information and belief, around May 1, 2016, The Defendants, their subscribers, and/or

25   third parties leaked JANE DOE NO. 11's real name and her contact information (social media, phone,

26   email, etc.) on other websites, including, at least, the blog www.pornwikileaks.com.  People then

27   harassed JANE DOE NO. 11 through social media, text message, and phone.  JANE DOE NO. 11

28   became depressed and debated suicide several times.

**JANE DOE NO. 12**

122.     Around February 2015, The Defendants posted an advertisement on Craigslist.com, seeking young women for adult modeling in Knoxville, Tennessee.

123.     That same month, JANE DOE NO. 12 corresponded with GARCIA and WOLFE by email and text message.  They offered her $5,000.00 to do adult videos.  JANE DOE NO. 12 asked them where the videos would be distributed.  They told her they would not post the videos online, they would not distribute the videos in the United States, and that she would remain anonymous.  They told her the videos would never go on the Internet and was for DVD in Australia only.  They assured her there was nothing to worry about, promised her privacy, and said nobody she knew would see the videos.  They had her speak with another women, who assured her the videos do not get leaked.

124.     On February 2, 2015 and February 5, 2015, JANE DOE NO. 12 made an adult video for The Defendants at a hotel in San Diego and at a condo downtown, respectively.  Before the shoot, GARCIA WOLFE assured JANE DOE NO. 12 they would not post the video online, they would not distribute the video in the United States, and that she would remain anonymous.

125.     They continued to make these representations when providing her with documents, which they said were simply her agreeing to the amount she would be paid and to the video, and also distracted her while she was reading.

126.     GARCIA and WOLFE then reneged on their promise to pay JANE DOE NO. 12 the $5,000 and only paid her $4,000.00 (saying she had cellulite on her legs).

127.     Around April 2015, The Defendants released JANE DOE NO. 12's video on www.girlsdoporn.com and other websites, which were then discovered by her family, friends, and school.

128.     Also on information and belief, around April 2015, The Defendants, their subscribers, and/or third parties leaked JANE DOE NO. 12's real name and her contact information (social media, phone, email, etc.) on other websites, including, at least, the blog www.pornwikileaks.com.  JANE DOE NO. 12 became depressed, had nightmares, and lost/injured relationships with friends and family.

///

///

**JANE DOE NO. 13**

129.    Around November 2015, The Defendants posted an advertisement on Craigslist.com, seeking young women for adult modeling in Knoxville, Tennessee.

130.    That same month, JANE DOE NO. 13 corresponded with GARCIA (going by his alias "Jonathan") and ROE 251 (going by his alias "Ted") by email and text message.  They offered her $5,000 to do an adult video.  JANE DOE NO. 13 asked them where the video would be distributed.  They told her they would not post the video online, they would not distribute the video in the United States, and that she would remain anonymous.  They told her the video would never go on the Internet and was for DVD in Australia only.  They assured her there was nothing to worry about, promised her privacy, and said nobody she knew would see the videos.  They had her speak with another women, who assured her the videos do not get leaked.

131.    On November 24, 2015, JANE DOE NO. 13 made an adult video for The Defendants at The Grand Hyatt Hotel in New York, New York (where The Defendants were traveling at the time).  Before the shoot, GARCIA and ROE 251 assured JANE DOE NO. 13 they would not post the video online, they would not distribute the video in the United States, and that she would remain anonymous.

132.    They continued to make these representations when providing her with documents, which they said were simply "summing up all they had talked about," and also distracted her and rushed her while she was reading.

133.    GARCIA and ROE 251 then reneged on their promise to pay JANE DOE NO. 13 the $5,000 and only paid her $3,000.00 (saying she had fat and cellulite on her legs, and they did not like her breasts).

134.    Around January 10, 2016, The Defendants released JANE DOE NO. 13's video on www.girlsdoporn.com and other websites, which were then discovered by her family, friends, and school.

135.    Also on information and belief, around on January 10, 2016, The Defendants, their subscribers, and/or third parties leaked JANE DOE NO. 12's real name and her contact information (social media, phone, email, etc.) on other websites, including, at least, the blog www.pornwikileaks.com.  People then harassed JANE DOE NO. 13 through social media, text message, and phone.  JANE DOE NO. 13

1   became depressed and debated suicide.

2   **JANE DOE NO. 14**

3   136.   Around July 2014, The Defendants posted an advertisement on Craigslist.com, seeking young

4   women for adult modeling in New York, New York.

5   137.   That same month, JANE DOE NO. 14 corresponded with GARCIA and WOLFE by email and

6   text message.  They offered her $5,000 to do adult videos.  JANE DOE NO. 14 asked them where the

7   videos would be distributed.  They told her they would not post the videos online, they would not

8   distribute the videos in the United States, and that she would remain anonymous.  They told her the

9   videos would never go on the Internet and was for DVD in Australia only.  They assured her there was

10  nothing to worry about, promised her privacy, and said nobody she knew would see the videos.  They

11  had her speak with another women, who assured her the videos do not get leaked.

12  138.   Around July 15, 2014, JANE DOE NO. 14 made an adult videos for The Defendants in San

13  Diego.  Before the shoot, GARCIA and WOLFE assured JANE DOE NO. 14 they would not post the

14  video online, they would not distribute the video in the United States, and that she would remain

15  anonymous.

16  139.   They continued to make these representations when providing her with documents, which they

17  said were simply "standard documents stating her name and age," and also distracted her and rushed

18  her while she was reading.

19  140.   Around June 2015, The Defendants released JANE DOE NO. 14's video on

20  www.girlsdoporn.com and other websites, which were then discovered by her family, friends, and

21  school.

22  141.   Also on information and belief, around on January 10, 2016, The Defendants, their subscribers,

23  and/or third parties leaked JANE DOE NO. 14's real name and her contact information (social media,

24  phone, email, etc.) on other websites, including, at least, the blog www.pornwikileaks.com.  People

25  then harassed JANE DOE NO. 14 and her family through social media, text message, and phone.

26  JANE DOE NO. 14 became depressed, lives in fear, and moved out of the country to Canada.

27  ///

28  ///

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**

**INTENTIONAL MISREPRESENTATION**

**(All The Plaintiffs against All Named Defendants and ROES 1 - 500)**

142.     The Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as though set forth herein, including, without limitation, the agency and alter ego allegations.

143.     During The Plaintiffs' discussions and negotiations with The Defendants before each made an adult video for The Defendants (and simultaneous with The Plaintiffs' attempted review of any purported agreements), The Defendants represented: they would not post the videos online (or cause such publication), they would not distribute the videos in the United States (or cause such publication), and that The Plaintiffs would remain anonymous.  The Defendants further represented at all times to The Plaintiffs that would not cause the videos to be posted online or distributed in the United States.  The Defendants at all times assured The Plaintiffs there was nothing to worry about, promised privacy, and said nobody The Plaintiffs knew would see the videos.  The Defendants caused other women to reiterate these representations to The Plaintiffs.  Finally, The Defendants represented they would pay The Plaintiffs certain sums of money; as set forth above, some of The Plaintiffs did not receive the sums represented.

144.     Those representations were false.

145.     The Defendants intended that The Plaintiffs rely on the above representations when each young woman decided to make an adult video.

146.     The Plaintiffs reasonably relied on the representations.

147.     The Plaintiffs have been harmed by their reasonable reliance in that The Defendants published their videos online, published their videos in the United States, and released The Plaintiffs' real names.

148.     The Plaintiffs' reliance on these false representations was a substantial factor in causing their harm.  The Plaintiffs have been harmed in an amount to be proven at trial, but that is, at least, $500,000 per plaintiff, and consists of, at least: (a) serious emotional distress, including, but not limited to, bullying, blackmail, loss of eating, loss of sleep, enduring fright, shock, nervousness, anxiety, depression, embarrassment, mortification, shame, and fear; (b) compensatory damages, including, but

22

1   not limited to the difference in value in what the parties exchanged (i.e., the money The Plaintiffs

2   received for what they were told was *limited* distribution and what The Defendants profited through

3   *global* distribution); and (c) restitution / unjust enrichment damages (same calculation as the

4   compensatory damages).  The Plaintiff also seek injunctive relief.

5   149.     The Defendants were acting individually and on behalf of each other when they made each of

6   these representations and, when one of them made a representation, the others ratified the

7   representation and/or knew of the misrepresentation and failed to correct it.

8   150.     The Defendants also acted in a conspiracy when they committed this fraud as: (1) each of The

9   Defendants had knowledge of and agreed to both the objective and course of action to injure The

10  Plaintiffs; (2) pursuant to their agreement, The Defendants intentionally mislead The Plaintiffs at the

11  time and place and via the manner set forth above; and (3) pursuant to their agreement, The Defendants

12  injured The Plaintiffs, as set forth above.

13  151.     The Defendants' actions were fraudulent, oppressive, and malicious and therefore warrant an

14  award of punitive damages pursuant to Section 3294 of the California Civil Code.

15              **SECOND CAUSE OF ACTION**

16              **FRAUDULENT CONCEALMENT**

17       **(All The Plaintiffs against All Named Defendants and ROES 1 – 500)**

18  152.     The Plaintiffs incorporate by reference all of the preceding paragraphs contained in this

19  complaint as though set forth herein, including, without limitation, the agency and alter ego allegations.

20  153.     During The Plaintiffs' discussions and negotiations with The Defendants before each made an

21  adult video for The Defendants (and simultaneous with The Plaintiffs' attempted review of any

22  purported agreements), The Defendants actively concealed their true identities (their individual names

23  and, more importantly, the identity of www.girlsdoporn.com, on which they intended to publish The

24  Plaintiffs nude photos and sex acts).  At all these times, they actively concealed the fact their true

25  intention was to post the videos online and distribute them in the United States – or cause such

26  publication and distribution.  At all these times, The Defendants also concealed the facts regarding: (a)

27  all of the other young women whose lives they have irreparably damaged earlier by The Defendants'

28  video publication and promotion; (b) all of the other young women imploring them to stop and to take

23

down their videos; and (c) all of the complaints that they (and their legal counsel) have received from other young women and their families.

154.    The Defendants owed The Plaintiffs duties to disclose this information as, among other reasons, they provided some information to The Plaintiffs during correspondence, and during contract and business negotiations.

155.    The Defendants knew of, but knowingly concealed, the true facts regarding their identifies, their website, their business, their video distribution, and the likelihood of injury to and harassment of The Plaintiffs.

156.    The Defendants concealed these facts with the intent to induce The Plaintiffs to make the adult videos.

157.    The concealed information was objectively material to any reasonable person and caused The Plaintiffs to make the adult videos.

158.    The Plaintiffs justifiably relied on The Defendants' false representations.

159.    The Defendants' failure to disclose these material facts to The Plaintiffs was substantial factor in causing their harm.  Had The Plaintiffs known of the undisclosed facts, they would not have made the adult videos.

160.    The Plaintiffs' reliance on these false representations was a substantial factor in causing their harm.  The Plaintiffs have been harmed in an amount to be proven at trial, but that is, at least, $500,000 per plaintiff, and consists of, at least: (a) serious emotional distress, including, but not limited to, bullying, blackmail, loss of eating, loss of sleep, enduring fright, shock, nervousness, anxiety, depression, embarrassment, mortification, shame, and fear; (b) compensatory damages, including, but not limited to the difference in value in what the parties exchanged (i.e., the money The Plaintiffs received for what they were told was *limited* distribution and what The Defendants profited through *global* distribution); and (c) restitution / unjust enrichment damages (same calculation as the compensatory damages).  The Plaintiff also seek injunctive relief.

161.    The Defendants were acting individually and on behalf of each other when they made each of these omissions and, when one of them made an omission, the others ratified the omission and/or knew of the omission and failed to correct it.

24

**SECOND AMENDED COMPLAINT**

162.     The Defendants also acted in a conspiracy when they committed this fraud as: (1) each of The Defendants had knowledge of and agreed to both the objective and course of action to injure The Plaintiffs; (2) pursuant to their agreement, The Defendants intentionally mislead The Plaintiffs at the time and place and via the manner set forth above; and (3) pursuant to their agreement, The Defendants injured The Plaintiffs, as set forth above.

163.     The Defendants' actions were fraudulent, oppressive, and malicious and therefore warrant an award of punitive damages pursuant to Section 3294 of the California Civil Code.

**THIRD CAUSE OF ACTION**

**FALSE PROMISE**

**(All The Plaintiffs against All Named Defendants and ROES 1 - 500)**

164.     The Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as though set forth herein, including, without limitation, the agency and alter ego allegations.

165.     During The Plaintiffs' discussions and negotiations with The Defendants before each made an adult video for The Defendants (and simultaneous with The Plaintiffs' attempted review of any purported agreements), The Defendants made promises to The Plaintiffs that: they would not post the videos online (or cause such publication), they would not distribute the videos in the United States (or cause such publication), and The Plaintiffs would remain anonymous.  The Defendants promised The Plaintiffs that would not cause the videos to be posted online or distributed in the United States.  The Defendants promised The Plaintiffs there was nothing to worry about, promised privacy, and promised nobody they knew would see the videos.  Finally, The Defendants represented they would pay The Plaintiffs certain sums of money; as set forth above, some of The Plaintiffs did not receive the sums represented.

166.     The Defendants' affirmative promises were of material fact and important as The Plaintiffs would not have otherwise made the adult videos.

167.     The Defendants did not intend to perform these promises at the times they made them, and have not performed as promised.  The Defendants knew their promises were false and merely wanted The Plaintiffs to make the videos for The Defendants' benefit.

168.     The Defendants intended to induce The Plaintiffs to alter their positions in reliance on the

25

**SECOND AMENDED COMPLAINT**

1  promises by making the adult videos.

2  169.    The Plaintiffs justifiably and reasonably relied on The Defendants' promises and The

3  Defendants' affirmative promises were an immediate cause of The Plaintiffs' conduct.

4  170.    The Defendants did not perform the promises.

5  171.    As an actual and proximate cause of The Defendants' false promises and The Plaintiffs'

6  justifiable reliance, The Plaintiffs were damaged in that The Defendants posted the videos online,

7  distributed the videos in the United States, and released The Plaintiffs' names.

8  172.    The Plaintiffs' reliance on these false representations was a substantial factor in causing their

9  harm.  The Plaintiffs have been harmed in an amount to be proven at trial, but that is, at least, $500,000

10  per plaintiff, and consists of, at least: (a) serious emotional distress, including, but not limited to,

11  bullying, blackmail, loss of eating, loss of sleep, enduring fright, shock, nervousness, anxiety,

12  depression, embarrassment, mortification, shame, and fear; (b) compensatory damages, including, but

13  not limited to the difference in value in what the parties exchanged (i.e., the money The Plaintiffs

14  received for what they were told was *limited* distribution and what The Defendants profited through

15  *global* distribution); and (c) restitution / unjust enrichment damages (same calculation as the

16  compensatory damages).  The Plaintiff also seek injunctive relief.

17  173.    The Defendants were acting individually and on behalf of each other when they made each of

18  these omissions and, when one of them made a false promise, the others ratified it, and/or knew of the

19  false promise and failed to correct it.

20  174.    The Defendants also acted in a conspiracy when they committed this fraud as: (1) each of The

21  Defendants had knowledge of and agreed to both the objective and course of action to injure The

22  Plaintiffs; (2) pursuant to their agreement, The Defendants intentionally mislead The Plaintiffs at the

23  time and place and via the manner set forth above; and (3) pursuant to their agreement, The Defendants

24  injured The Plaintiffs, as set forth above.

25  175.    The Defendants' actions were fraudulent, oppressive, and malicious and therefore warrant an

26  award of punitive damages pursuant to Section 3294 of the California Civil Code.

27  ///

28  ///

## **FOURTH CAUSE OF ACTION**

## **NEGLIGENT MISREPRESENTATION**

### **(Jane Doe Nos. 1-3, 5-8, and 10-14 against All Named Defendants and ROES 1 - 500)**

176.     The Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as though set forth herein, including, without limitation, the agency and alter ego allegations.

177.     During The Plaintiffs' discussions and negotiations with The Defendants before each made an adult video for The Defendants (and simultaneous with The Plaintiffs' attempted review of any purported agreements), The Defendants represented: they would not post the videos online (or cause such publication), they would not distribute the videos in the United States (or cause such publication), and that The Plaintiffs would remain anonymous.  The Defendants further represented at all times to The Plaintiffs that would not cause the videos to be posted online or distributed in the United States. The Defendants at all times assured The Plaintiffs there was nothing to worry about, promised privacy, and said nobody The Plaintiffs knew would see the videos.  The Defendants caused other women to reiterate these representations to The Plaintiffs.

178.     The representations were false and although The Defendants may have honestly believed that the representations were true, they had no reasonable grounds for believing the representations were true when they made them.

179.     The Defendants intended that The Plaintiffs would rely on the above representations in their decisions to make the adult videos.

180.     The Plaintiffs reasonably relied on The Defendants' misrepresentations in their decisions to make the adult videos.

181.     The Plaintiffs' reliance on The Defendants' false representations was a substantial factor in causing their harm in that The Defendants posted their videos online, published their videos in the United States, and released The Plaintiffs' names.

182.     The Plaintiffs' reliance on these false representations was a substantial factor in causing their harm.  The Plaintiffs have been harmed in an amount to be proven at trial, but that is, at least, $500,000 per plaintiff, and consists of, at least, compensatory damages, including, but not limited to the difference in value in what the parties exchanged (i.e., the money The Plaintiffs received for what they

27

1   were told was *limited* distribution and what The Defendants profited through *global* distribution).

2   **FIFTH CAUSE OF ACTION**

3   **MISAPPROPRIATION OF NAME AND LIKENESS [COMMON LAW]**

4   **(All The Plaintiffs against All Named Defendants and ROES 1 - 500)**

5   183.    The Plaintiffs incorporate by reference all of the preceding paragraphs contained in this

6   complaint as though set forth herein, including, without limitation, the agency and alter ego allegations.

7   184.    The Defendants used The Plaintiffs' names, likenesses, and/or identities without The Plaintiffs'

8   permission, though fraud, and/or without promised consideration, including, without limitation, on The

9   Defendants' websites (e.g., www.girlsdoporn.com), social media, and advertising.  Finally, any release

10  purporting to give The Defendants unconditional use of The Plaintiff's videos is unenforceable due to

11  unclear terms, a lack of mental capacity/competence, mistake, undue influence, and/or The Defendants'

12  unclean hands.

13  185.    The Defendants' gained a commercial benefit by using The Plaintiffs' names, likenesses, and/or

14  identities.

15  186.    Following Defendants' initial publication of each of The Plaintiffs' videos on their own

16  websites, and through the date of this amended complaint, Defendants have republished and redirected

17  the misappropriated content to different websites and to different audiences.  Defendants have

18  republished The Plaintiffs' misappropriated likenesses to different audiences in various advertising

19  campaigns on the Internet, including on third party websites (such as www.pornhub.com and

20  www.youporn.com), where Defendants post varying and edited snippets of The Plaintiffs' videos with

21  embedded links and advertisements to Defendants' websites; these varying and edited snippets of The

22  Plaintiffs' videos have been viewed millions of times by hundreds of thousands of different individuals.

23  Defendants conduct the same form of repetitive mass advertising on their fan blogs and forums, and on

24  their own social media.

25  187.    The Plaintiffs' reliance on these false representations was a substantial factor in causing their

26  harm.  The Plaintiffs have been harmed in an amount to be proven at trial, but that is, at least, $500,000

27  per plaintiff, and consists of, at least: (a) serious emotional distress, including, but not limited to,

28  bullying, blackmail, loss of eating, loss of sleep, enduring fright, shock, nervousness, anxiety,

28

1   depression, embarrassment, mortification, shame, and fear; (b) compensatory damages, including, but

2   not limited to the difference in value in what the parties exchanged (i.e., the money The Plaintiffs

3   received for what they were told was *limited* distribution and what The Defendants profited through

4   *global* distribution); and (c) restitution / unjust enrichment damages (same calculation as the

5   compensatory damages).  The Plaintiff also seek injunctive relief.

6   188.    The Defendants also acted in a conspiracy when they committed this tort as: (1) each of The

7   Defendants had knowledge of and agreed to both the objective and course of action to injure The

8   Plaintiffs; (2) pursuant to their agreement, The Defendants intentionally misappropriated The Plaintiffs'

9   names, likenesses, and/or identities at the time and place and via the manner set forth above; and (3)

10  pursuant to their agreement, The Defendants injured The Plaintiffs, as set forth above.

11  189.    The Defendants' actions were fraudulent, oppressive, and malicious and therefore also warrant

12  an award of punitive damages pursuant to Section 3294 of the California Civil Code.

13                              **<u>SIXTH CAUSE OF ACTION</u>**

14              **<u>MISAPPROPRIATION OF LIKENESS [CIVIL CODE § 3344]</u>**

15              **(All The Plaintiffs against All Named Defendants and ROES 1 - 500)**

16  190.    The Plaintiffs incorporate by reference all of the preceding paragraphs contained in this

17  complaint as though set forth herein, including, without limitation, the agency and alter ego allegations.

18  191.    On their websites (e.g., www.girlsdoporn.com), social media, and other advertising, The

19  Defendants knowingly used The Plaintiffs' names, voices, photographs, video, and likenesses to

20  advertise or sell subscriptions to The Defendants' businesses.

21  192.    The Defendants' use did not occur in connection with a news, public affairs, or sports broadcast

22  or account, or with a political campaign.

23  193.    The Defendants did not have The Plaintiffs' consent, obtained it though fraud, and/or without

24  promised consideration.  Finally, any release purporting to give The Defendants unconditional use of

25  The Plaintiff's videos is unenforceable due to unclear terms, a lack of mental capacity/competence,

26  mistake, undue influence, and/or The Defendants' unclean hands.

27  194.    The Defendants use of The Plaintiffs' names, voices, photographs, video, and likenesses was

28  directly connected to The Defendants' commercial purpose.

195.    Following Defendants' initial publication of each of The Plaintiffs' videos on their own websites, and through the date of this amended complaint, Defendants have republished and redirected the misappropriated content to different websites and to different audiences.  Defendants have republished The Plaintiffs' misappropriated likenesses to different audiences in various advertising campaigns on the Internet, including on third party websites (such as www.pornhub.com and www.youporn.com), where Defendants post varying and edited snippets of The Plaintiffs' videos with embedded links and advertisements to Defendants' websites; these varying and edited snippets of The Plaintiffs' videos have been viewed millions of times by hundreds of thousands of different individuals. Defendants conduct the same form of repetitive mass advertising on their fan blogs and forums, and on their own social media.

196.    The Plaintiffs' reliance on these false representations was a substantial factor in causing their harm.  The Plaintiffs have been harmed in an amount to be proven at trial, but that is, at least, $500,000 per plaintiff, and consists of, at least: (a) serious emotional distress, including, but not limited to, bullying, blackmail, loss of eating, loss of sleep, enduring fright, shock, nervousness, anxiety, depression, embarrassment, mortification, shame, and fear; (b) compensatory damages and/or statutory damages, including, disgorgement of profits; (c) attorney fees; and (d) restitution / unjust enrichment damages (i.e., the money The Plaintiffs received for what they were told was *limited* distribution and what The Defendants profited through *global* distribution).  The Plaintiff also seek injunctive relief.

197.    The Defendants also acted in a conspiracy when they committed this tort as: (1) each of The Defendants had knowledge of and agreed to both the objective and course of action to injure The Plaintiffs; (2) pursuant to their agreement, The Defendants intentionally misappropriated The Plaintiffs' names, voices, photographs, video, and likenesses at the time and place and via the manner set forth above; and (3) pursuant to their agreement, The Defendants injured The Plaintiffs, as set forth above.

198.    The Defendants' actions were fraudulent, oppressive, and malicious and therefore also warrant an award of punitive damages pursuant to Section 3294 of the California Civil Code.

///

///

///

**SEVENTH CAUSE OF ACTION**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**(Jane Doe Nos. 1-3, 5-8, and 10-14 against All Named Defendants and ROES 1 - 500)**

199.    The Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as though set forth herein, including, without limitation, the agency and alter ego allegations.

200.    The Defendants concealed the fact they run an online pornography website.  In order to get The Plaintiffs to make adult videos, The Defendants lied to The Plaintiffs about the distribution.  They assured The Plaintiffs there was nothing to worry about and promised privacy.  The Defendants knew all of the other young women whose lives they have irreparably damaged earlier by The Defendants' video publication and promotion; all of the other young women imploring them to stop and to take down their videos; and all of the complaints and they (and their legal counsel) have received from other young women and their families.  The Defendants used The Plaintiffs' videos and names to commercially promote their websites and enrich themselves.  This conduct was outrageous as it exceeded all bounds of common decency usually tolerated by a civilized society.

201.    The Defendants intended to inflict the injuries stated herein upon The Plaintiffs, or the injuries were substantially certain to result from The Defendants' conduct.

202.    The Defendants' outrageous conduct actually and proximately caused The Plaintiffs to suffer serious emotional distress, including, but not limited to, loss of eating, loss of sleep, enduring fright, shock, nervousness, anxiety, depression, embarrassment, mortification, shame, fear, and – for some - consideration of suicide.  The Plaintiffs have been harmed in an amount to be proven at trial, but that is, at least, $500,000 per plaintiff.

203.    The Defendants also acted in a conspiracy when they committed this tort as: (1) each of The Defendants had knowledge of and agreed to both the objective and course of action to injure The Plaintiffs; (2) pursuant to their agreement, with their outrageous conduct, The Defendants intentionally inflicted severe emotional distress upon The Plaintiffs at the time and place and via the manner set forth above; and (3) pursuant to their agreement, The Defendants injured The Plaintiffs, as set forth above.

204.    The Defendants' actions were fraudulent, oppressive, and malicious and therefore warrant an award of punitive damages pursuant to Section 3294 of the California Civil Code.

# EIGHTH CAUSE OF ACTION

## NEGLIGENCE

**(Jane Doe Nos. 1-3, 5-8, and 10-14 against All Named Defendants and ROES 1 - 500)**

205.    The Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as though set forth herein, including, without limitation, the agency and alter ego allegations.

206.    In their transactions and dealings with The Plaintiff, The Defendants had a duty to use ordinary care and to prevent injury to The Plaintiffs based on the foreseeability of harm to The Plaintiffs, the degree of certainty The Plaintiff would suffer injuries, the closeness of connection between The Defendants' actions and The Plaintiffs' injuries, the moral blame attached to The Defendants' conduct, the policy of preventing future harm, and the extent of The Defendants' burden and the consequences to the community of imposing duty and liability.

207.    The Defendants' above-described actions and omissions (e.g., lying about and concealing the fact they run an online pornography website upon which they planned to post the videos; and assuring The Plaintiffs there was nothing to worry about – all while knowing that release of the videos would cause harassment and severe emotional damage), breached the duty of care.

208.    The Defendants' breach of the duty of care actually and proximately caused The Plaintiffs harm in an amount to be proven at trial, but that is, at least, $500,000 per plaintiff, and consists of, at least: (a) serious emotional distress, including, but not limited to, bullying, blackmail, loss of eating, loss of sleep, enduring fright, shock, nervousness, anxiety, depression, embarrassment, mortification, shame, and fear; (b) compensatory damages, including, but not limited to the difference in value in what the parties exchanged (i.e., the money The Plaintiffs received for what they were told was *limited* distribution and what The Defendants profited through *global* distribution); and (c) restitution / unjust enrichment damages (same calculation as the compensatory damages).  The Plaintiff also seek injunctive relief.

///

///

///

1      **NINTH CAUSE OF ACTION**

2      **BREACH OF CONTRACT**

3      **(Jane Doe Nos. 1-3, 5-8, and 10-14 against All Named Defendants and ROES 1 - 500)**

4      209.    The Plaintiffs incorporate by reference all of the preceding paragraphs contained in this

5      complaint as though set forth herein, including, without limitation, the agency and alter ego allegations.

6      210.    The Plaintiffs entered into oral agreements with The Defendants whereby The Plaintiffs agreed

7      to make their respective videos with the conditions: they would not post the videos online (or cause

8      such publication), they would not distribute the videos in the United States (or cause such publication),

9      and they would ensure their privacy and anonymity.

10     211.    The Plaintiffs performed all of their obligations under the agreements; in particular, they

11     participated in the video shoots.

12     212.    All conditions required for The Defendants' performances occurred, but they breached the

13     contract by distributing and/or causing the videos to be posted online and in the United States, and by

14     failing to ensure The Plaintiffs' privacy and anonymity.  Also, as set forth above, some of The Plaintiffs

15     did not receive the sums agreed upon for their video(s).

16     213.    As an actual and proximate cause of The Defendants' breach, The Plaintiffs were damaged in an

17     amount to be proven at trial, but believed to be, at least, $500,000 per plaintiff.

18     **TENTH CAUSE OF ACTION**

19     **PROMISSORY ESTOPPEL**

20     **(Jane Doe Nos. 1-3, 5-8, and 10-14 against All Named Defendants and ROES 1 - 500)**

21     214.    The Plaintiffs incorporate by reference all of the preceding paragraphs contained in this

22     complaint as though set forth herein, including, without limitation, the agency and alter ego allegations.

23     215.    The Defendants made clear and unambiguous promises to The Plaintiffs that: they would not

24     post the videos online (or cause such publication), they would not distribute the videos in the United

25     States (or cause such publication), and they would ensure their privacy and anonymity.

26     216.    The Plaintiffs relied on these promises in that they made the videos.

27     217.    The Plaintiffs' reliance was both reasonable and foreseeable.

28     218.    The Plaintiffs were injured as a result in that The Defendants distributed or cause the

33

**SECOND AMENDED COMPLAINT**

1  distribution of the videos online and in the United States, and failed to ensure The Plaintiffs' privacy
2  and anonymity.

3  219.  Injustice can be avoided only by an award of compensatory and consequential damages in the
4  amount of, at least, $500,000 per plaintiff.

5  **ELEVENTH CAUSE OF ACTION**

6  **VIOLATION OF BUSINESS & PROFESSIONS CODE §§ 17200, et seq.**

7  **(All The Plaintiffs against All Named Defendants and ROES 1 - 500)**

8  220.  The Plaintiffs incorporate by reference all of the preceding paragraphs contained in this
9  complaint as though set forth herein, including, without limitation, the agency and alter ego allegations.

10  221.  The Defendants' conduct constitutes a "business practice" under Business & Professions Code,
11  Section 17200, et seq. ("Section 17200").

12  222.  The Defendants' "business practice" constitutes "unlawful" conduct under Section 17200, as it
13  violates common and California statutory law.  The Defendants' "business practice" constitutes
14  "fraudulent" conduct under Section 17200, as it deceives – and is likely to deceive – members of the
15  public.

16  223.  The Defendants intended their conduct to cause – and it did so cause – The Plaintiffs to suffer
17  economic injury in fact and caused The Defendants to receive ill-gotten gains.  The Plaintiffs were
18  damaged – and The Defendants unjustly enriched - in an amount to be proven at trial, but believed to
19  be, at least, $500,000 per plaintiff.  As such, The Plaintiffs have individual standing under Section
20  17200.

21  224.  Pursuant to the remedies provisions of Section 17200: The Defendants owe The Plaintiffs
22  restitution of The Plaintiffs' property (e.g., videos and images); the Court should enjoin The
23  Defendants' violative conduct; and the Court should issue the maximum civil penalties permitted.
24  ///
25  ///
26  ///
27
28

34
**SECOND AMENDED COMPLAINT**

1

## TWELFTH CAUSE OF ACTION

2

## FRAUDULENT TRANSFER

3

**(All The Plaintiffs against All The Named Defendants and ROES 475 - 550)**

4   225.    The Plaintiffs incorporate by reference all of the preceding paragraphs contained in this

5   complaint as though set forth herein, including, without limitation, the agency and alter ego allegations.

6   226.    The Plaintiffs have a right to payment from The Defendants for the claims in this action and are,

7   thus, creditors.

8   227.    On information and belief, The Defendants transferred The Plaintiffs' videos and the revenue

9   generated therefrom to defendant Oh Well Media Limited (a sham entity in Vanuatu used to hide

10   assets) and ROES 200 – 250 with the intent to hinder, delay, or defraud The Plaintiffs in their collection

11   efforts on the subject claims.

12   228.    The Plaintiffs were harmed as, among other things, they still have not received compensation

13   for the claims in this action.

14   229.    The Defendants' conduct was a substantial factor in causing The Plaintiffs' harm.

15   230.    The Defendants' actions were fraudulent and malicious and therefore warrant an award of

16   punitive damages pursuant to Section 3294 of the California Civil Code.

17   ///

18   ///

19   ///

20

21

22

23

24

25

26

27

28

**SECOND AMENDED COMPLAINT**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **PRAYER FOR RELIEF**

WHEREFORE, The Plaintiffs pray for judgment against The Defendants as follows:

A.      For compensatory damages of, at least, $7,000,000;

B.      For restitution and ill-gotten gains/unjust enrichment;

C       For civil penalties;

D.      For an injunction;

E.      For punitive damages;

F.      For attorney fees;

G.      For prejudgment interest;

H.      For costs of suit; and

I.      For such other and further relief as the Court deems just and proper.


Date: March 13, 2017                              By: */s/ John J. O'Brien*
                                                      Robert Hamparyan
                                                      John J. O'Brien
                                                      Brian M. Holm
                                                      Carrie Goldberg
                                                      **Attorneys for Plaintiffs**

**SECOND AMENDED COMPLAINT**

**PROOF OF SERVICE**
**(Section 1013a, 2015.5 Code of Civ. Proc.)**
**State of California, County of**

I am employed in the County of San Diego, State of California.  I am over 18 years of age and not a party to the within action; my business address is 275 West Market Street, San Diego, California 92101.

**Case Name: Jane DOES v. Girlsdoporn.com, et. al**
**Case Number: 37-2016-00019027-CU-FR-CTL**

On March 13, 2017, I served the following documents described as:

**PLAINTIFFS' SECOND AMENDED COMPLAINT (REDACTED)**

On the interested parties in this action, addressed as follows:

George D. Rikos
Law Office of George Rikos
225 Broadway, Suite 2100, San Diego, CA 92101
Tel: (858) 342-9161
Fax: (866) 365-4856
***Counsel for Defendant DOMI Publications, LLC.***
george@georgerikoslaw.com

Aaron Sadock, Esq.
Panakos Law APC
555 West Beech Street, Suite 500
San Diego, CA 92101
Fax: (866) 365-4856
asadock@panakoslaw.com
***Co-Counsel for Remaining Defendants***

John J. O'Brien
THE O'BRIEN LAW FIRM, APLC
750 B Street, Suite 3300
San Diego, CA 92101
Tel: 619.535.5151
Fax: (888) 805-6785
john@theobrienlawfirm.com
***Co-Counsel for Plaintiffs***

Daniel Kaplan
Law Offices of Daniel A. Kaplan
555 West Beech Street, Suite 230
San Diego, CA 92101
Tel: (619) 685-3988
Fax: (619) 684-3239
dkaplan@danielkaplanlaw.com
***Co-Counsel for Remaining Defendants***

Brian M. Holm
HOLM LAW GROUP, PC
12636 High Bluff Drive, Suite 400
San Diego, CA 92130
Tel: 858.707.5858
brian@holmlawgroup.com
***Co-Counsel for Plaintiffs***

Carrie Goldberg
C.A. GOLDBERG, PLLC
16 Court Street, Suite 2500
Brooklyn, NY 11241
Tel: 646.666.8908
carrie@cagoldberglaw.com
***Co-Counsel for Plaintiffs***

– 1 –

Proof of Service

____ BY MAIL:  I am readily familiar with the office practice for collection and processing of correspondence for mailing with the United States Postal Service (USPS). The correspondence indicated above would be deposited with the USPS the same date as this declaration in the ordinary course of business. The correspondence was placed for deposit with the USPS at the offices of the Law Offices of Robert Hamparyan, 275 West Market Street, San Diego, California. The envelope(s) was/were sealed with postage fully prepaid on this date and placed for collection and mailing following ordinary business practices and addressed as shown above.

____ BY PERSONAL SERVICE:  By personally delivering the above-captioned document(s) to the parties within.

____ BY FACSIMILE TRANSMISSION:  I caused the above-referenced document to be faxed to the fax number(s) indicated above. The facsimile machine I used complied with rule 2.301 and no error was reported by the machine. Pursuant to rule 2.306(g), I caused the machine to print a record of the transmission.

____ BY OVERNIGHT MAIL:  I caused to be served by leaving for delivery by USPS a copy of the aforementioned document, in sealed envelopes addressed as shown above.

_X_ BY ELECTRONIC SERVICE:  By sending the above-captioned document(s) to the parties via electronic transmission through One Legal as stipulated between parties.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on March 13, 2017, at San Diego, California.

*Alicia Aquino*

**Alicia Aquino**