1   Robert Hamparyan (State Bar No. 181934)
    ROBERT HAMPARYAN, APC
2   275 W. Market Street
    San Diego, CA 92101
3   t. 619.550.1355
    e. robert@hamparyanlawfirm.com
4
    John J. O'Brien (State Bar No. 253392)
5   THE O'BRIEN LAW FIRM, APLC
    750 B Street, Suite 3300
6   San Diego, CA 92101
    t. 619.535.5151
7   e. john@theobrienlawfirm.com
8   Brian M. Holm (State Bar No. 255691)
    HOLM LAW GROUP, PC
9   12636 High Bluff Drive, Suite 400
    San Diego, CA 92130
10  t. 858.707.5858
    e. brian@holmlawgroup.com
11
12  **Attorneys for Plaintiffs**

13             **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

14                        **COUNTY OF SAN DIEGO**

15  JANE DOE NOS. 1 - 4, inclusive, individuals;     CASE NO.:**37-2016-00019027-CU-FR-CTL**

16              Plaintiffs,                           **COMPLAINT**

17      v.                                           1. Intentional Misrepresentation
                                                     2. Fraudulent Concealment
18  GIRLSDOPORN.COM, a business organization,        3. False Promise
    form unknown; MICHAEL J. PRATT, an               4. Negligent Misrepresentation
19  individual; ANDRE GARCIA, an individual;         5. False Imprisonment
    MATTHEW WOLFE, an individual; BLL                6. Sexual Battery
20  MEDIA, INC., a California corporation; BLL        7. Gender Violence [Civ. C. § 52.4]
    MEDIA HOLDINGS, LLC, a Nevada limited            8. Intentional Infliction of Emotional Distress
21  liability company; DOMI PUBLICATIONS,            9. Misappropriation of Name & Likeness
    LLC, a Nevada limited liability company; EG          [Common Law]
22  PUBLICATIONS, INC., a California                 10. Misappropriation of Name & Likeness
    corporation; M1M MEDIA, LLC, a California            [Civ. C. § 3344]
23  limited liability company; BUBBLEGUM             11. Negligence
    FILMS, INC., a business organization, form       12. Breach of Contract
24  unknown; OH WELL MEDIA LIMITED, a                13. Promissory Estoppel
    business organization, form unknown; MERRO       14. Unlawful & Fraudulent Business Practices
25  MEDIA, INC., a California corporation; MERRO          [Bus. & Prof. Code §17200]
    MEDIA HOLDINGS, LLC, a Nevada limited
26  liability company; and ROES 1 - 500, inclusive,
27
                Defendants.
28

                                              1
                                         **COMPLAINT**

1    Plaintiffs JANE DOES NOS. 1 - 4, inclusive, individuals, (all plaintiffs collectively, "The

2   Plaintiffs") bring this action against defendants GIRLSDOPORN.COM, a business organization, form

3   unknown; MICHAEL J. PRATT, an individual; ANDRE GARCIA, an individual; MATTHEW

4   WOLFE, an individual; BLL MEDIA, INC., a California corporation; BLL MEDIA HOLDINGS,

5   LLC, a Nevada limited liability company; DOMI PUBLICATIONS, LLC, a Nevada limited liability

6   company; EG PUBLICATIONS, INC., a California corporation; M1M MEDIA, LLC, a California

7   limited liability company; BUBBLEGUM FILMS, INC., a business organization, form unknown; OH

8   WELL MEDIA LIMITED, a business organization, form unknown; MERRO MEDIA, INC., a

9   California corporation; MERRO MEDIA HOLDINGS, LLC, a Nevada limited liability company; and

10   ROES 1 - 500, inclusive (all defendants collectively, "The Defendants").

11                                    **THE PARTIES**

12   1.    Plaintiff JANE DOE NO. 1 is an individual residing in San Diego County, California.

13   2.    Plaintiff JANE DOE NO. 2 is an individual residing in San Diego County, California.

14   3.    Plaintiff JANE DOE NO. 3 is an individual residing in San Diego County, California.

15   4.    Plaintiff JANE DOE NO. 4 is an individual residing in Manmouth County, New Jersey.

16   5.    GIRLSDOPORN.COM is a business organization, form unknown, with its principal place of

17   business in San Diego County, California.

18   6.    BLL MEDIA, INC. is a California corporation with its principal place of business in San Diego

19   County, California.

20   7.    BLL MEDIA HOLDINGS, LLC is a Nevada limited liability company with its principal place

21   of business in Clark County, Nevada.

22   8.    DOMI PUBLICATIONS, LLC is a Nevada limited liability company with its principal place of

23   business in Clark County, Nevada.

24   9.    EG PUBLICATIONS, INC. is a California corporation with its principal place of business in

25   San Diego County, California.

26   10.    M1M MEDIA, LLC is a California limited liability company with its principal place of business

27   in San Diego County, California.

28   11.    BUBBLEGUM FILMS, INC. is a business organization, form unknown, with, on information

2

**COMPLAINT**

1   and belief, its "principal place of business" in Port Vila, Vanuatu.

2   12.    OH WELL MEDIA LIMITED is a business organization, form unknown, with, on information

3   and belief, its "principal place of business" in Port Vila, Vanuatu.

4   13.    MERRO MEDIA, INC. is a California corporation with its principal place of business in San

5   Diego County, California.

6   14.    MERRO MEDIA HOLDINGS, LLC is a Nevada limited liability company with its principal

7   place of business in Clark County, Nevada.

8   15.    On information and belief, GIRLSDOPORN.COM, BLL MEDIA, INC., BLL MEDIA

9   HOLDINGS, LLC, DOMI PUBLICATIONS, LLC, EG PUBLICATIONS, INC., MIM MEDIA, LLC,

10  BUBBLEGUM FILMS, INC., OH WELL MEDIA LIMITED, MERRO MEDIA, INC., MERRO

11  MEDIA HOLDINGS, LLC; and ROES 1 - 250 ("THE ENTITY DEFENDANTS") are entities in the

12  business of online pornography production, distribution, and sales.  On information and belief, THE

13  ENTITY DEFENDANTS own and/or operate numerous online pornography websites, including,

14  without limitation, www.girlsdoporn.com.

15  16.    MICHAEL J. PRATT ("PRATT") is an individual residing in San Diego County, California.

16  On information and belief, he is a sales agent and representative, and the majority or sole shareholder,

17  managing member, and/or chief executive officer of each of THE ENTITY DEFENDANTS.

18  17.    ANDRE GARCIA ("GARCIA") is an individual residing in San Diego County, California.  On

19  information and belief, he is a sales agent and representative for each of THE ENTITY DEFENDANTS

20  – as well as a participant and "actor" in their pornography.

21  18.    MATTHEW WOLFE ("WOLFE") is an individual residing in San Diego County, California.

22  On information and belief, he is a sales agent and representative for each of THE ENTITY

23  DEFENDANTS – as well as a videographer of their pornography.

24  19.    On information and belief, ROES 251 – 500 are other shareholders, members, officers, sales

25  agents, representatives, videographers, and/or "actors" of THE ENTITY DEFENDANTS.

26  20.    The Plaintiffs are ignorant of the true names, capacities, and/or liabilities of defendants sued

27  herein as ROES 1 - 500, inclusive, and therefore sue these defendants by such fictitious names and

28  allege that ROES 1 - 500 are responsible in some manner for the occurrences herein alleged.  The

1  Plaintiffs will amend this complaint to allege their true names, capacities, and/or liabilities when

2  ascertained.

3  21.     In doing all things alleged herein, including, without limitation, corresponding, negotiating, and

4  contracting with The Plaintiffs, The Defendants were agents, servants, representatives, partners, joint

5  venturers, affiliates, parents, subsidiaries, and/or employees of each other in the acts and/or omissions

6  herein alleged.  The Defendants were and are acting within the course and scope of their authority as

7  such agents, servants, representatives, partners, joint venturers, affiliates, parents, subsidiaries, and/or

8  employees and with the permission, authorization, consent, and ratification of each other.

9  22.     In doing all things alleged herein, including, without limitation, corresponding, negotiating, and

10  contracting with The Plaintiffs, THE ENTITY DEFENDANTS, PRATT, GARCIA, WOLFE, and

11  ROES 251 – 500 acted as alter egos of each other.  In particular, they: (a) commingled their funds and

12  other assets, failed to segregate funds between them, and have without authorization diverted corporate

13  funds and assets for noncorporate uses; (b) treated each other's assets as their own; (c) issued shares of

14  one other to themselves and third parties haphazardly and without authority; (d) held themselves out as

15  being personally liable for the debts of each other; (e) failed to maintain minutes and corporate records,

16  and confused of the records of the separate entities; (f) used the same business locations and employed

17  the same employees; (g) failed to adequately capitalize the entities; (h) used each other as a conduit for

18  a single venture of themselves; (i) failed to maintain arm's length relationships among themselves; and

19  (j) diverted assets without consideration from/to one another to the detriment of creditors, including

20  The Plaintiffs.  Recognition of the privilege of separate existences between these defendants would

21  promote injustice, unfairness, and fraud.  Any separateness is to be disregarded.  As such, The

22  Defendants are jointly and severally liable in this action as alter egos.

23                                  **JURISDICTION AND VENUE**

24  23.     This Court has jurisdiction over The Defendants as they are physically present in San Diego

25  County, California and/or because The Defendants committed the subject acts and omissions in San

26  Diego County, California.

27  24.     Venue is proper as San Diego County is where The Defendants reside and have their principal

28  place of business, the subject contracts were entered into, and/or the obligations and liability arose.

## FACTUAL ALLEGATIONS

**The Defendants' Business Scam: Lie to Young Women and Con them into Online Pornography**

25.     PRATT, GARCIA, WOLFE and the rest of The Defendants operate a San Diego-based pornography business, which irreparably damages the lives of young women from San Diego and across the country.

26.     The Defendants collectively run pornography websites, the main website being www.girlsdoporn.com, a subscription-based amateur pornography website, which gets more traffic than the San Diego Padres website.

27.     The young women appearing in The Defendants' amateur pornography come from good families, have never appeared in pornography before, are often paying their way through school, and are just beginning their careers and adulthood.  So, there is only way The Defendants can convince these women to have sex on film: The Defendants lie to them.

28.     The Defendants advertise themselves across the country as a legitimate Southern California modeling agency, directing applicants to a sham website, e.g., www.beginemodelling.com.  The website contains an "Apply Now" form on every page that asks for the name, age, height, weight, state, city, email, and phone number of each applicant.  It also contains an attachment where prospective models can upload photos.  Once obtaining the information, The Defendants reach out to the women by phone or email in order to feel the women out.  Eventually, The Defendants offer the young women thousands of dollars for adult film work.

29.     When the young women ask The Defendants where they will distribute the video, The Defendants assure them that they will not post the video online, they will not distribute the video in the United States, and they will keep each woman anonymous.  The Defendants represent the videos will be on DVDs overseas and for private use.  If needed for convincing, The Defendants provide a reference woman, who previously shot a video (but, whose video is not yet released), to vouch for The Defendants and promise the same security, limited distribution, and anonymity.

30.     After The Defendants lie to the young women, they book rooms (usually under PRATT'S name) at upscale San Diego County hotels, most often at major high-end chains in downtown San Diego (e.g., Hilton, Hyatt, Marriot).  If the young women are not in Southern California, The

5

1   Defendants pay for their airfare to San Diego (again, usually using PRATT'S name / credit card).

2   31.   Then, without hotel knowledge and consent, and, on information and belief, without any license

3   or permit, The Defendants sneak videography equipment into the hotel – hiding the equipment in large

4   suitcases – in order to produce the amateur pornography.

5   32.   Once the young women are confined to the hotel room, The Defendants present them with

6   documents to sign: (a) under duress and coercion (often yelling at them and saying there is no time to

7   read); and (b) while continuing to orally misrepresent their intent for the video's eventual distribution.

8   33.   After the filming begins, and/or when the young women are told what to do, if they refuse or

9   say they are uncomfortable or in pain, The Defendants often yell at them, saying it is too late to change

10   their minds and they cannot leave the hotel room. Further, the filming often takes much longer than the

11   promised – often, the young women are confined in the hotel room and forced to film and have sex for

12   many hours. Even worse, the young women are sometimes forced to have sex when not filming – to

13   appease the "actor," most often GARCIA.

14   34.   Around one month after filming, things get unimaginably worse for the young women. Despite

15   their earlier representations, The Defendants release the videos on, at least, www.girlsdoporn.com (their

16   monthly subscription website) and www.girls-do-porn.com (a free website with clips of the videos that

17   then directs the user to www.girlsdoporn.com). The Defendants also release/license all or part of the

18   videos all over the internet on a multiple of free pornography websites – in part, to advertise

19   www.girlsdoporn.com with the images and likenesses of the young women. (Interestingly, and by no

20   accident, GARCIA'S (and any other male participant's) face is never shown in any video.) Soon

21   thereafter, someone who knows one of the young women will notify them the video is online. This

22   becomes the first time the young women have ever heard of The Defendants' website:

23   www.girlsdoporn.com.

24   35.   When the young women reach out to The Defendants, they discover The Defendants have

25   changed their phone numbers (they use disposable phones and/or changeable Internet phone numbers).

26   Later, the young women discover The Defendants have also used fake names (e.g., PRATT often uses

27   "Mark," GARCIA often uses "Jonathan," and WOLFE often uses "Ben" or "Isaac").

28   ///

1   36.     Finally, to further injure the young women, The Defendants release their real names online,

2   usually on blogs followed by "fans" of www.girlsdoporn.com, who then stalk, harass, bully, and

3   blackmail the young women and their families – online, by telephone, and in-person.

4   37.     As a result, these young women lose relationships with friends, significant others, and family.

5   Some lose or change jobs, and some are forced to leave their school.  Months to years after the videos,

6   many young women are still harassed by strangers on the Internet.  And, many have suffered severe

7   psychological damage, necessitating medical, and professional treatment.  Some have consulted rape

8   counselors.  Some have attempted suicide.

9   38.     Below, are specific facts and claims of four (4) plaintiff young women.

10  **JANE DOE NO. 1**

11  39.     In July 2015, The Defendants posted an advertisement on Craigslist.com in the gigs/modeling

12  section for the Las Vegas area, seeking young women for adult modeling.

13  40.     That same month, JANE DOE NO. 1 responded to the advertisement and corresponded with

14  GARCIA (going by his alias "Jonathan") by email, text message, and telephone.  GARCIA eventually

15  offered her $9,200.00 for 3 videos.

16  41.     That same month, in July 2015, GARCIA told JANE DOE NO. 1 on the phone that they would

17  not post the videos online, they would not distribute the videos in the United States, and they would not

18  release her name.  GARCIA told her the video would go to *one* "private buyer" overseas in Australia –

19  and would only be in DVD format.

20  42.     On August 3, 2015, September 14, 2015, and September 22, 2015, JANE DOE NO. 1 made

21  adult videos for The Defendants at The Palomar in downtown San Diego, 707 10th Avenue in

22  downtown San Diego, and at the Coronado Island Marriott, respectively.  Before each shoot, GARCIA

23  and WOLFE (going by his alias "Ben"), again, assured JANE DOE NO. 1 they would not post the

24  videos online, they would not distribute the videos in the United States, and they would not release her

25  name.

26  43.     During the filming on September 22, 2015 at the Coronado Island Marriott, JANE DOE NO. 1

27  expressed physical and mental discomfort.  GARCIA and WOLFE would not allow her to leave.

28  ///

44.     In October 2015, The Defendants released JANE DOE NO. 1's videos on their website, www.girlsdoporn.com, and other websites, which were then discovered by her high school, college, and graduate school friends and acquaintances – as well her family.  Also around October 2015, The Defendants leaked JANE NO. DOE 1's real name and her contact information (social media, phone, email, etc.) on other websites, including, at least, the blog www.pornwikileaks.com.  Internet strangers then harassed JANE DOE NO. 1 through social media, text message, and phone.  They also emailed and called JANE DOE NO. 1's college and graduate school students, faculty, and deans, calling her a "whore, slut, disgrace, etc.," sent links to or screenshots of her videos, and later tagged her new boyfriend on social media with the video.  She considered dropping out of school.  When JANE DOE NO. 1 goes to her hometown, she often cannot leave the house due to the humiliation and embarrassment.

**JANE DOE NO. 2**

45.     In April 2015, The Defendants posted an advertisement on Craigslist.com in the gigs/modeling section for San Diego, CA, seeking young women for fashion modeling.

46.     That same month, JANE DOE NO. 2 responded to the advertisement and corresponded with GARCIA (going by his alias "Jonathan") by email, text message, and telephone.  GARCIA asked her to come his condo in downtown San Diego to discuss the modeling shoot.  At the condo, JANE DOE NO. 2 met GARCIA and WOLFE (going by his alias "Isaac").

47.     At GARCIA's condo in April 2015, GARCIA and WOLFE surprised JANE DOE NO. 2 with the news that the modeling shoot was actually an adult film, and offered her $5,000 cash.  They told JANE DOE NO. 2 they would not post the video online, they would not distribute the video in the United States, and they would not release her name.  They told her the video would go to "private buyers" overseas and would only be in DVD format.  They further told her the "private buyers" had contracts, which prevented them from sharing or distributing the videos.  GARCIA and WOLFE had JANE DOE NO. 2 call another young woman named "Taylor," who assured JANE DOE NO. 2 the video would remain private.

48.     In April 2015, JANE DOE NO. 2 made an adult video for The Defendants at the Hard Rock Hotel in downtown San Diego.  There, GARCIA and WOLFE, again, assured JANE DOE NO. 2 they

1 would not post the video online, they would not distribute the video in the United States, and they

2 would not release her name.  When providing her with a written agreement, GARCIA and WOLFE

3 would not allow JANE DOE NO. 2 to read it, and told her it was merely a "tax form" and "privacy

4 agreement."

5 49. During the shoot, JANE DOE NO. 2 expressed physical and mental discomfort.  GARCIA and

6 WOLFE told her she could not leave.  She was afraid to leave.

7 50. On or about April 10, 2015, The Defendants released JANE DOE NO. 2's video on

8 www.girlsdoporn.com and other websites, which was discovered by her friends and acquaintances – as

9 well her family.  Also around April 10, 2015, The Defendants leaked JANE DOE NO. 2's real name

10 and her contact information (social media, phone, email, etc.) on other websites, including, at least, the

11 blog www.pornwikileaks.com.  The users of that blog then harassed JANE DOE NO. 2 through social

12 media, text message, and phone, calling her a "whore, slut, disgrace, etc.," sent her friends and

13 acquaintances links to or screenshots of her video, and later tagged her new boyfriend on social media

14 with the video.

15 **JANE DOE NO. 3**

16 51. In March 2014, The Defendants posted an advertisement on exploretalent.com, seeking young

17 women for adult modeling in San Diego, CA.

18 52. That same month, JANE DOE NO. 3 responded to the advertisement and corresponded with

19 GARCIA (going by his alias "Jonathan") by email and text message.  GARCIA offered her $3,000.00

20 to do an adult video.  JANE DOE NO. 3 asked GARCIA where the video would be distributed.

21 GARCIA told her they would not post the video online, they would not distribute the video in the

22 United States, and they would not release her name.  GARCIA told her the video would be on DVD

23 and only distributed overseas in South America.

24 53. On March 23, 2014, JANE DOE NO. 3 made an adult video for The Defendants at the Hilton

25 San Diego Bayfront.  Before the shoot, GARCIA and WOLFE (going by his alias "Ben"), again,

26 assured JANE DOE NO. 3 they would not post the video online, they would not distribute the video in

27 the United States, and they would not release her name.

28 ///

54. Around July 4, 2014, The Defendants released JANE DOE NO. 3's video on www.girlsdoporn.com and other websites, which were then discovered by her family, friends, co-workers, and employer. Also around July 4, 2014, The Defendants leaked JANE DOE NO. 3's real name and her contact information (social media, phone, email, etc.) on other websites, including, at least, the blog www.pornwikileaks.com. The users of that blog then harassed JANE DOE NO. 3 through social media, text message, and phone. She has been shunned and blackmailed by friends and coworkers.

**JANE DOE NO. 4**

55. In April 2013, The Defendants, going by their alias "Bubblegum Casting," posted an advertisement on Craigslist.com in the gigs/modeling section for Eastern, North Carolina, seeking young women for modeling.

56. That same month, JANE DOE NO. 4 responded to the advertisement and corresponded with WOLFE by email and text message. JANE DOE NO. 4 also FaceTimed with WOLFE and GARCIA. WOLFE and GARCIA offered her $2,000.00 to do an adult video. JANE DOE NO. 4 asked WOLFE and GARCIA where the video would be distributed. WOLFE and GARCIA told her they would not post the video online, they would not distribute the video in the United States, and they would not release her name. WOLFE and GARCIA told her the video would be on DVD and would go only to a video store in Australia.

57. On April 9, 2013, JANE DOE NO. 4 made an adult video for The Defendants at the downtown San Diego Marriott. The Defendants booked the room under WOLFE'S name. Before the shoot, GARCIA and WOLFE, again, assured JANE DOE NO. 4 they would not post the video online, they would not distribute the video in the United States, and they would not release her name.

58. During the shoot, JANE DOE NO. 4 became scared and in extreme pain, so she asked GARCIA and WOLFE to leave. They told her she could not leave until they were finished.

59. GARCIA and WOLFE then reneged on their promise to pay JANE DOE NO. 4 the $2,000 and only paid her $400 (they gave her stack of cash with twenty dollar bills on top, but clandestinely filled the middle with one dollar bills). They also locked JANE DOE NO. 4 out of the hotel room, forcing her to find other hotel accommodations alone.

60.     Around June 2013, The Defendants released JANE DOE NO. 4's videos on www.girlsdoporn.com and other websites, including www.pornhub.com, which were then discovered by her family and friends. Also around June 2013, The Defendants leaked JANE DOE NO. 4's real name and her contact information (social media, phone, email, etc.) on other websites, including, at least, the blog www.pornwikileaks.com. Later, the users of that blog then harassed JANE DOE NO. 4 through social media, text message, and phone. JANE DOE NO. 4 became depressed, could not leave the house, was bullied, was blackmailed, and her car was vandalized.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

## INTENTIONAL MISREPRESENTATION

### (All The Plaintiffs against All The Defendants)

61.     The Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as though set forth herein, including, without limitation, the agency and alter ego allegations.

62.     During The Plaintiffs' discussions and negotiations with The Defendants before each made an adult video for The Defendants, The Defendants represented: they would not post the videos online, they would not distribute the videos in the United States, and they would not release The Plaintiffs' names.

63.     Those representations were false.

64.     The Defendants intended that The Plaintiffs rely on the above representations when each young woman decided to make an adult video.

65.     The Plaintiffs reasonably relied on the representations.

66.     The Plaintiffs have been harmed by their reasonable reliance in that The Defendants published their videos online, published their videos in the United States, and released The Plaintiffs' real names.

67.     The Plaintiffs' reliance on these false representations was a substantial factor in causing their harm. The Plaintiffs have been harmed in an amount to be proven at trial, but that is, at least, $500,000 per plaintiff, and consists of, at least, financial injury, loss of income, and serious emotional distress, including, but not limited to, bullying, blackmail, loss of eating, loss of sleep, enduring fright, shock, nervousness, anxiety, depression, embarrassment, mortification, shame, and fear.

11

68.    The Defendants were acting individually and on behalf of each other when they made each of these representations and, when one of them made a representation, the others ratified the representation and/or knew of the misrepresentation and failed to correct it.

69.    The Defendants also acted in a conspiracy when they committed this fraud as: (1) each of The Defendants had knowledge of and agreed to both the objective and course of action to injure The Plaintiffs; (2) pursuant to their agreement, The Defendants intentionally mislead The Plaintiffs at the time and place and via the manner set forth above; and (3) pursuant to their agreement, The Defendants injured The Plaintiffs, as set forth above.

70.    The Defendants' actions were fraudulent, oppressive, and malicious and therefore warrant an award of punitive damages pursuant to Section 3294 of the California Civil Code.

**SECOND CAUSE OF ACTION**

**FRAUDULENT CONCEALMENT**

**(All The Plaintiffs against All The Defendants)**

71.    The Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as though set forth herein, including, without limitation, the agency and alter ego allegations.

72.    During The Plaintiffs' discussions and negotiations with The Defendants before each made an adult video for The Defendants, The Defendants actively concealed their true identities (their individual names and, more importantly, the identity of www.girlsdoporn.com, on which they intended to publish The Plaintiffs nude photos and sex acts).  They actively concealed the fact their true intention was to post the videos online, distribute them in the United States, and release The Plaintiffs' names.

73.    The Defendants owed The Plaintiffs duties to disclose this information as, among other reasons, they provided some information to The Plaintiffs during correspondence, and during contract and business negotiations.

74.    The Defendants knew of, but knowingly concealed, the true facts regarding their identifies, their website, their business, their video distribution, and their release of The Plaintiff's names.

75.    The Defendants concealed these facts with the intent to induce The Plaintiffs to make the adult videos.

///

76.     The concealed information was objectively material to any reasonable person and caused The Plaintiffs to make the adult videos.

77.     The Plaintiffs justifiably relied on The Defendants' false representations.

78.     The Defendants' failure to disclose these material facts to The Plaintiffs was substantial factor in causing their harm.  Had The Plaintiffs known of the undisclosed facts, they would not have made the adult videos.

79.     The Plaintiffs have been harmed in an amount to be proven at trial, but that is, at least, $500,000 per plaintiff, and consists of, at least, financial injury, loss of income, and serious emotional distress, including, but not limited to, loss of eating, loss of sleep, enduring fright, shock, nervousness, anxiety, depression, embarrassment, mortification, shame, and fear.

80.     The Defendants were acting individually and on behalf of each other when they made each of these omissions and, when one of them made an omission, the others ratified the omission and/or knew of the omission and failed to correct it.

81.     The Defendants also acted in a conspiracy when they committed this fraud as: (1) each of The Defendants had knowledge of and agreed to both the objective and course of action to injure The Plaintiffs; (2) pursuant to their agreement, The Defendants intentionally mislead The Plaintiffs at the time and place and via the manner set forth above; and (3) pursuant to their agreement, The Defendants injured The Plaintiffs, as set forth above.

82.     The Defendants' actions were fraudulent, oppressive, and malicious and therefore warrant an award of punitive damages pursuant to Section 3294 of the California Civil Code.

### THIRD CAUSE OF ACTION

### FALSE PROMISE

### (All The Plaintiffs against All The Defendants)

83.     The Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as though set forth herein, including, without limitation, the agency and alter ego allegations.

84.     The Defendants made promises to The Plaintiffs that: they would not post the videos online, they would not distribute the videos in the United States, and they would not release The Plaintiffs' names.

85.     The Defendants' affirmative promises were of material fact and important as The Plaintiffs would not have otherwise made the adult videos.

86.     The Defendants did not intend to perform these promises at the times they made them, and have not performed as promised.  The Defendants knew their promises were false and merely wanted The Plaintiffs to make the videos for The Defendants' benefit.

87.     The Defendants intended to induce The Plaintiffs to alter their positions in reliance on the promises by making the adult videos.

88.     The Plaintiffs justifiably and reasonably relied on The Defendants' promises and The Defendants' affirmative promises were an immediate cause of The Plaintiffs' conduct.

89.     The Defendants did not perform the promises.

90.     As an actual and proximate cause of The Defendants' false promises and The Plaintiffs' justifiable reliance, The Plaintiffs were damaged in that The Defendants posted the videos online, distributed the videos in the United States, and released The Plaintiffs' names.

91.     The Plaintiffs have been harmed in an amount to be proven at trial, but that is, at least, $500,000 per plaintiff, and consists of, at least, financial injury, loss of income, and serious emotional distress, including, but not limited to, loss of eating, loss of sleep, enduring fright, shock, nervousness, anxiety, depression, embarrassment, mortification, shame, and fear.

92.     The Defendants were acting individually and on behalf of each other when they made each of these omissions and, when one of them made a false promise, the others ratified it, and/or knew of the false promise and failed to correct it.

93.     The Defendants also acted in a conspiracy when they committed this fraud as: (1) each of The Defendants had knowledge of and agreed to both the objective and course of action to injure The Plaintiffs; (2) pursuant to their agreement, The Defendants intentionally mislead The Plaintiffs at the time and place and via the manner set forth above; and (3) pursuant to their agreement, The Defendants injured The Plaintiffs, as set forth above.

94.     The Defendants' actions were fraudulent, oppressive, and malicious and therefore warrant an award of punitive damages pursuant to Section 3294 of the Califomia Civil Code.

///

**FOURTH CAUSE OF ACTION**

**NEGLIGENT MISREPRESENTATION**

**(All The Plaintiffs against All The Defendants)**

95.    The Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as though set forth herein, including, without limitation, the agency and alter ego allegations.

96.    During their negotiations, contracting, and dealings with The Plaintiffs, The Defendants made the above representations: they would not post the videos online, they would not distribute the videos in the United States, and they would not release The Plaintiffs' names.

97.    The representations were false and although The Defendants may have honestly believed that the representations were true, they had no reasonable grounds for believing the representations were true when they made them.

98.    The Defendants intended that The Plaintiffs would rely on the above representations in their decisions to make the adult videos.

99.    The Plaintiffs reasonably relied on The Defendants' misrepresentations in their decisions to make the adult videos.

100.    The Plaintiffs' reliance on The Defendants' false representations was a substantial factor in causing their harm in that The Defendants posted their videos online, published their videos in the United States, and released The Plaintiffs' names.

101.    The Plaintiffs have been harmed in an amount to be proven at trial, but that is, at least, $500,000 per plaintiff, and consists of, at least, financial injury, loss of income, and serious emotional distress, including, but not limited to, loss of eating, loss of sleep, enduring fright, shock, nervousness, anxiety, depression, embarrassment, mortification, shame, and fear.

**FIFTH CAUSE OF ACTION**

**FALSE IMPRISONMENT**

**(All The Plaintiffs against All The Defendants)**

102.    The Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as though set forth herein, including, without limitation, the agency and alter ego allegations.

103.    The Defendants intentionally deprived The Plaintiffs of their freedom of movement by use of

15

COMPLAINT

1  fraud, deceit, and/or unreasonable duress.

2  104.    The Defendants' conduct compelled The Plaintiffs to stay in their respective hotel rooms during

3  the video shoots for an appreciable period of time.

4  105.    The Plaintiffs did not voluntarily consent.

5  106.    The Plaintiffs were harmed by The Defendants' conduct in an amount to be proven at trial, but

6  is believed to be, at least, $500,000 per plaintiff, and consists of, at least, financial injury, loss of

7  income, and serious emotional distress, including, but not limited to, loss of eating, loss of sleep,

8  enduring fright, shock, nervousness, anxiety, depression, embarrassment, mortification, shame, and

9  fear.

10  107.    The Defendants also acted in a conspiracy when they committed this tort as: (1) each of The

11  Defendants had knowledge of and agreed to both the objective and course of action to injure The

12  Plaintiffs; (2) pursuant to their agreement, The Defendants intentionally held The Plaintiffs at the time

13  and place and via the manner set forth above; and (3) pursuant to their agreement, The Defendants

14  injured The Plaintiffs, as set forth above.

15  108.    The Defendants' actions were fraudulent, oppressive, and malicious and therefore warrant an

16  award of punitive damages pursuant to Section 3294 of the Califomia Civil Code.

17                              **SIXTH CAUSE OF ACTION**

18                                  **SEXUAL BATTERY**

19                          **(All The Plaintiffs against All The Defendants)**

20  109.    The Plaintiffs incorporate by reference all of the preceding paragraphs contained in this

21  complaint as though set forth herein, including, without limitation, the agency and alter ego allegations.

22  110.    The Defendants intended to cause a harmful and/or offensive contact with The Plaintiffs' sexual

23  organs, groin, buttocks, and breasts, and a sexually harmful and/or offensive contact with the same

24  resulted directly.

25  111.    The Plaintiffs' consent was obtained by fraud (i.e., they would not have consented to the sexual

26  contact but for The Defendants' above-referenced deceit).

27  112.    The Defendants' conduct harmed The Plaintiffs in an amount to be proven at trial, but is

28  believed to be, at least, $500,000 per plaintiff, and consists of, at least, financial injury, loss of income,

                                            16

1    and serious emotional distress, including, but not limited to, loss of eating, loss of sleep, enduring

2    fright, shock, nervousness, anxiety, depression, embarrassment, mortification, shame, and fear.

3    113.    The Defendants also acted in a conspiracy when they committed this tort as: (1) each of The

4    Defendants had knowledge of and agreed to both the objective and course of action to injure The

5    Plaintiffs; (2) pursuant to their agreement, The Defendants intentionally battered The Plaintiffs at the

6    time and place and via the manner set forth above; and (3) pursuant to their agreement, The Defendants

7    injured The Plaintiffs, as set forth above.

8    114.    The Defendants' actions were fraudulent, oppressive, and malicious and therefore warrant an

9    award of punitive damages pursuant to Section 3294 of the California Civil Code.

10                              **SEVENTH CAUSE OF ACTION**

11                         **GENDER VIOLENCE [Civil Code § 52.4]**

12                      **(All The Plaintiffs against All The Defendants)**

13   115.    The Plaintiffs incorporate by reference all of the preceding paragraphs contained in this

14   complaint as though set forth herein, including, without limitation, the agency and alter ego allegations.

15   116.    The Defendants subjected The Plaintiffs to physical intrusions and physical invasions of a

16   sexual nature under coercive and fraudulent conditions.

17   117.    The Defendants conduct caused The Plaintiffs harm in an amount to be proven at trial, but is

18   believed to be, at least, $500,000 per plaintiff, and consists of, at least, financial injury, loss of income,

19   and serious emotional distress, including, but not limited to, loss of eating, loss of sleep, enduring

20   fright, shock, nervousness, anxiety, depression, embarrassment, mortification, shame, and fear.

21   118.    Pursuant to Civil Code § 52.4, The Plaintiffs are entitled to actual and compensatory damages,

22   injunctive relief, attorney fees, and punitive damages.

23   119.    The Defendants also acted in a conspiracy when they committed this wrongful conduct as: (1)

24   each of The Defendants had knowledge of and agreed to both the objective and course of action to

25   injure The Plaintiffs; (2) pursuant to their agreement, The Defendants intentionally harmed The

26   Plaintiffs at the time and place and via the manner set forth above; and (3) pursuant to their agreement,

27   The Defendants injured The Plaintiffs, as set forth above.

28   ///

120.    The Defendants' actions were fraudulent, oppressive, and malicious and therefore also warrant an award of punitive damages pursuant to Section 3294 of the California Civil Code.

### EIGHTH CAUSE OF ACTION

### MISAPPROPRIATION OF NAME AND LIKENESS [COMMON LAW]

**(All The Plaintiffs against All The Defendants)**

121.    The Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as though set forth herein, including, without limitation, the agency and alter ego allegations.

122.    The Defendants used The Plaintiffs' names, likenesses, and/or identities without The Plaintiffs' permission, including, without limitation, on The Defendants' websites (e.g., www.girlsdoporn.com), social media, and advertising.

123.    The Defendants' gained a commercial benefit by using The Plaintiffs' names, likenesses, and/or identities.

124.    The Defendants conduct caused The Plaintiffs harm in an amount to be proven at trial, but is believed to be, at least, $500,000 per plaintiff, and consists of, at least, financial injury, loss of income, and serious emotional distress, including, but not limited to, loss of eating, loss of sleep, enduring fright, shock, nervousness, anxiety, depression, embarrassment, mortification, shame, and fear.

125.    The Defendants also acted in a conspiracy when they committed this tort as: (1) each of The Defendants had knowledge of and agreed to both the objective and course of action to injure The Plaintiffs; (2) pursuant to their agreement, The Defendants intentionally misappropriated The Plaintiffs' names, likenesses, and/or identities at the time and place and via the manner set forth above; and (3) pursuant to their agreement, The Defendants injured The Plaintiffs, as set forth above.

126.    The Defendants' actions were fraudulent, oppressive, and malicious and therefore also warrant an award of punitive damages pursuant to Section 3294 of the California Civil Code.

### NINTH CAUSE OF ACTION

### MISAPPROPRIATION OF LIKENESS [CIVIL CODE § 3344]

**(All The Plaintiffs against All The Defendants)**

127.    The Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as though set forth herein, including, without limitation, the agency and alter ego allegations.

18

COMPLAINT

128.   On their websites (e.g., www.girlsdoporn.com), social media, and other advertising, The Defendants knowingly used The Plaintiffs' names, voices, photographs, video, and likenesses to advertise or sell subscriptions to The Defendants' businesses.

129.   The Defendants' use did not occur in connection with a news, public affairs, or sports broadcast or account, or with a political campaign.

130.   The Defendants did not have The Plaintiffs' consent.

131.   The Defendants use of The Plaintiffs' names, voices, photographs, video, and likenesses was directly connected to The Defendants' commercial purpose.

132.   The Defendants conduct caused The Plaintiffs harm in an amount to be proven at trial, but is believed to be, at least, $500,000 per plaintiff, and consists of, at least, financial injury, loss of income, and serious emotional distress, including, but not limited to, loss of eating, loss of sleep, enduring fright, shock, nervousness, anxiety, depression, embarrassment, mortification, shame, and fear.

133.   The Defendants also acted in a conspiracy when they committed this tort as: (1) each of The Defendants had knowledge of and agreed to both the objective and course of action to injure The Plaintiffs; (2) pursuant to their agreement, The Defendants intentionally misappropriated The Plaintiffs' names, voices, photographs, video, and likenesses at the time and place and via the manner set forth above; and (3) pursuant to their agreement, The Defendants injured The Plaintiffs, as set forth above.

134.   The Defendants' actions were fraudulent, oppressive, and malicious and therefore also warrant an award of punitive damages pursuant to Section 3294 of the California Civil Code.

## TENTH CAUSE OF ACTION

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (All The Plaintiffs against All The Defendants)

135.   The Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as though set forth herein, including, without limitation, the agency and alter ego allegations.

136.   The Defendants concealed the fact they run an online pornography website. In order to get The Plaintiffs to make adult videos, The Defendants lied to The Plaintiffs about the distribution. Then, after publishing the videos online, to further and permanently injure The Plaintiffs, The Defendants released The Plaintiffs' names, all contrary to their representations and promises. The Defendants then used the

19

1    videos and names to commercially promote their websites. This conduct was outrageous as it exceeded

2    all bounds of common decency usually tolerated by a civilized society.

3    137.    The Defendants intended to inflict the injuries stated herein upon The Plaintiffs, or the injuries

4    were substantially certain to result from The Defendants' conduct.

5    138.    The Defendants' outrageous conduct actually and proximately caused The Plaintiffs to suffer

6    serious emotional distress, including, but not limited to, loss of eating, loss of sleep, enduring fright,

7    shock, nervousness, anxiety, depression, embarrassment, mortification, shame, and fear. The Plaintiffs

8    have been harmed in an amount to be proven at trial, but that is, at least, $500,000 per plaintiff.

9    139.    The Defendants also acted in a conspiracy when they committed this tort as: (1) each of The

10    Defendants had knowledge of and agreed to both the objective and course of action to injure The

11    Plaintiffs; (2) pursuant to their agreement, with their outrageous conduct, The Defendants intentionally

12    inflicted severe emotional distress upon The Plaintiffs at the time and place and via the manner set forth

13    above; and (3) pursuant to their agreement, The Defendants injured The Plaintiffs, as set forth above.

14    140.    The Defendants' actions were fraudulent, oppressive, and malicious and therefore warrant an

15    award of punitive damages pursuant to Section 3294 of the California Civil Code.

16    **ELEVENTH CAUSE OF ACTION**

17    **NEGLIGENCE**

18    **(All The Plaintiffs against All The Defendants)**

19    141.    The Plaintiffs incorporate by reference all of the preceding paragraphs contained in this

20    complaint as though set forth herein, including, without limitation, the agency and alter ego allegations.

21    142.    In their transactions and dealings with The Plaintiff, The Defendants had a duty to use ordinary

22    care and to prevent injury to The Plaintiffs based on the foreseeability of harm to The Plaintiffs, the

23    degree of certainty The Plaintiff would suffer injuries, the closeness of connection between The

24    Defendants' actions and The Plaintiffs' injuries, the moral blame attached to The Defendants' conduct,

25    the policy of preventing future harm, and the extent of The Defendants' burden and the consequences to

26    the community of imposing duty and liability.

27    143.    The Defendants' above-described actions and omissions (e.g., lying about and concealing the

28    fact they run an online pornography website, publishing the videos online, releasing The Plaintiffs' real

1  names, using the videos and names to commercially promote their websites, falsely imprisoning The

2  Plaintiffs, and sexually battering The Plaintiffs) breached the duty of care.

3  144.    The Defendants' breach of the duty of care actually and proximately caused The Plaintiffs'

4  harm in an amount to be proven at trial, but that is, at least, $500,000 per plaintiff, and consists of, at

5  least, financial injury, loss of income, and serious emotional distress, including, but not limited to, loss

6  of eating, loss of sleep, enduring fright, shock, nervousness, anxiety, depression, embarrassment,

7  mortification, shame, and fear.

8  **TWELTH CAUSE OF ACTION**

9  **BREACH OF CONTRACT**

10  **(All The Plaintiffs against All The Defendants)**

11  145.    The Plaintiffs incorporate by reference all of the preceding paragraphs contained in this

12  complaint as though set forth herein, including, without limitation, the agency and alter ego allegations.

13  146.    The Plaintiffs entered into oral agreements with The Defendants whereby The Plaintiffs agreed

14  to make their respective videos with the conditions: they would not post the videos online, they would

15  not distribute the videos in the United States, and they would not release The Plaintiffs' names.

16  147.    The Plaintiffs performed all of their obligations under the agreements; in particular, they

17  participated in the video shoots.

18  148.    All conditions required for The Defendants' performances occurred, but they breached the

19  contract by distributing the videos online and in the United States, and by releasing The Plaintiffs'

20  names.

21  149.    As an actual and proximate cause of The Defendants' breach, The Plaintiffs were damaged in an

22  amount to be proven at trial, but believed to be, at least, $500,000 per plaintiff.

23  **THIRTEENTH CAUSE OF ACTION**

24  **PROMISSORY ESTOPPEL**

25  **(All The Plaintiffs against All The Defendants)**

26  150.    The Plaintiffs incorporate by reference all of the preceding paragraphs contained in this

27  complaint as though set forth herein, including, without limitation, the agency and alter ego allegations.

28  ///

21
COMPLAINT

1  151.  The Defendants made clear and unambiguous promises to The Plaintiffs that: they would not

2  post the videos online, they would not distribute the videos in the United States, and they would not

3  release The Plaintiffs' names.

4  152.  The Plaintiffs relied on these promises in that they made the videos.

5  153.  The Plaintiffs' reliance was both reasonable and foreseeable.

6  154.  The Plaintiffs were injured as a result in that The Defendants distributed the videos online and

7  in the United States, and released The Plaintiffs' names.

8  155.  Injustice can be avoided only by an award of compensatory and consequential damages in the

9  amount of, at least, $500,000 per plaintiff.

10  **FOURTEENTH CAUSE OF ACTION**

11  **VIOLATION OF BUSINESS & PROFESSIONS CODE §§ 17200, et seq.**

12  **(All The Plaintiffs against All The Defendants)**

13  156.  The Plaintiffs incorporate by reference all of the preceding paragraphs contained in this

14  complaint as though set forth herein, including, without limitation, the agency and alter ego allegations.

15  157.  The Defendants' conduct constitutes a "business practice" under Business & Professions Code,

16  Section 17200, et seq. ("Section 17200").

17  158.  The Defendants' "business practice" constitutes "unlawful" conduct under Section 17200, as it

18  violates common and California statutory law.  The Defendants' "business practice" constitutes

19  "fraudulent" conduct under Section 17200, as it deceives – and is likely to deceive – members of the

20  public.

21  159.  The Defendants intended their conduct to cause – and it did so cause – The Plaintiffs to suffer

22  economic injury in fact and caused The Defendants to receive ill-gotten gains.  The Plaintiffs were

23  damaged – and The Defendants unjustly enriched - in an amount to be proven at trial, but believed to

24  be, at least, $500,000 per plaintiff.  As such, The Plaintiffs have individual standing under Section

25  17200.

26  160.  Pursuant to the remedies provisions of Section 17200: The Defendants owe The Plaintiffs

27  restitution of The Plaintiffs' property (e.g., videos and images); the Court should enjoin The

28  Defendants' violative conduct; and the Court should issue the maximum civil penalties permitted.

22

COMPLAINT

**PRAYER FOR RELIEF**

WHEREFORE, The Plaintiffs pray for judgment against The Defendants as follows:

A.   For compensatory damages in an amount of, at least, $2,000,000;

B.   For restitution;

C    For civil penalties;

D.   For an injunction;

E.   For punitive damages;

F.   For attorney fees;

G.   For prejudgment interest;

H.   For costs of suit; and

I.    For such other and further relief as the Court deems just and proper.

Date: June 2, 2016                                    By:

Robert Hamparyan
John J. O'Brien
Brian M. Holm
**Attorneys for Plaintiffs**