2017 SEP 7 PM 3:30

1  Robert Hamparyan (State Bar No. 181934)
   ROBERT HAMPARYAN, APC
2  275 W. Market Street
   San Diego, CA 92101
3  t. 619.550.1355
   e. robert@hamparyanlawfirm.com
4

**F I L E D**
Clerk of the Superior Court

SEP 0 7 2017

**By: R. BABERS, Deputy**

5  John J. O'Brien (State Bar No. 253392)
   THE O'BRIEN LAW FIRM, APLC
6  750 B Street, Suite 3300
   San Diego, CA 92101
7  t. 619.535.5151
   e. john@theobrienlawfirm.com
8

9  Brian M. Holm (State Bar No. 255691)
   HOLM LAW GROUP, PC
10 12636 High Bluff Drive, Suite 400
   San Diego, CA 92130
11 t. 858.707.5858
   e. brian@holmlawgroup.com
12

**Attorneys for Plaintiffs**
13

14              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
15                          **COUNTY OF SAN DIEGO**

16 JANE DOE NO. 15, an individual; JANE DOE        CASE NO.: **37-2017-00033321-CU-FR-CTL**
17 NO. 16, an individual;
                                                    **COMPLAINT**
18              Plaintiffs,
19 v.                                               **[JURY TRIAL DEMANDED]**

20 GIRLSDOPORN.COM, a business                      1. Intentional Misrepresentation
   organization, form unknown; MICHAEL J.           2. Fraudulent Concealment
21 PRATT, an individual; ANDRE GARCIA, an           3. False Promise
   individual; MATTHEW WOLFE, an                    4. Negligent Misrepresentation
22 individual; BLL MEDIA, INC., a California        5. Misappropriation of Name & Likeness
   corporation; BLL MEDIA HOLDINGS, LLC,               [Common Law]
23 a Nevada limited liability company; DOMI        6. Misappropriation of Name & Likeness
   PUBLICATIONS, LLC, a Nevada limited                 [Civ. C. § 3344]
24 liability company; EG PUBLICATIONS, INC.,       7. Intentional Infliction of Emotional Distress
   a California corporation; M1M MEDIA, LLC,       8. Negligence
25 a California limited liability company;         9. Breach of Contract
   BUBBLEGUM FILMS, INC., a business               10. Promissory Estoppel
26 organization, form unknown; OH WELL             11. Unlawful & Fraudulent Business Practices
   MEDIA LIMITED, a business organization,            [Bus. & Prof. Code §17200]
27 form unknown; MERRO MEDIA, INC., a              12. Fraudulent Transfer
28 California corporation; MERRO MEDIA

                                    1
                               **COMPLAINT**

1  HOLDINGS, LLC, a Nevada limited liability
   company; CLOCKWORK PRODUCTIONS,
2  INC., a business organization, form unknown;
   UHD PRODUCTIONS, LLC, a Wyoming
3  limited liability company; BUBBLEGUM
   FILMS, LTD., a business organization, form
4  unknown; GREENHILL SERVICES, LTD., a
   business organization, form unknown; SIDLE
5  MEDIA LIMITED, a business organization,
   form unknown; RIVA YOUSIF, an individual;
6  THEODORE GYI, an individual; VALERIE
7  MOSER, an individual; CLIFF ELLIS, an
   individual; KAILYN WRIGHT, an individual;
8  DOUGLAS WIEDERHOLD, an individual;
   and ROES 1 - 550, inclusive,
9

10         Defendants.

11

12         This action is intricately related to San Diego Superior Court Case No.: 37-2016-19027-CU-FR-

13  CTL, where 14 similarly-situated young women sue the same fraudulent pornography business.

14                                              ----

15         Plaintiffs JANE DOE NO. 15 and JANE DOE No. 16, inclusive, individuals, (all plaintiffs

16  collectively, "Plaintiffs") bring this complaint against defendants GIRLSDOPORN.COM, a business

17  organization, form unknown; MICHAEL J. PRATT, an individual; ANDRE GARCIA, an individual;

18  MATTHEW WOLFE, an individual; BLL MEDIA, INC., a California corporation; BLL MEDIA

19  HOLDINGS, LLC, a Nevada limited liability company; DOMI PUBLICATIONS, LLC, a Nevada

20  limited liability company; EG PUBLICATIONS, INC., a California corporation; M1M MEDIA, LLC,

21  a California limited liability company; BUBBLEGUM FILMS, INC., a business organization, form

22  unknown; OH WELL MEDIA LIMITED, a business organization, form unknown; MERRO MEDIA,

23  INC., a California corporation; MERRO MEDIA HOLDINGS, LLC, a Nevada limited liability

24  company; CLOCKWORK PRODUCTIONS, INC., place of incorporation unknown; UHD MEDIA,

25  INC., place of incorporation unknown; BUBBLEGUM FILMS, LTD., place of incorporation unknown;

26  GREENHILL SERVICES, LTD., place of incorporation unknown; SIDLE MEDIA LIMITED, place of

27  incorporation unknown; RIVA YOUSIF, an individual; THEODORE "TEDDY" GYI, an individual;

28  VALERIE MOSER, an individual; CLIFF ELLIS, an individual; and ROES 1-550 (all defendants

                                            2
                                       **COMPLAINT**

1   collectively, "Defendants").

2                                    **THE PARTIES**

3   **Plaintiffs**

4   1.      Plaintiff JANE DOE NO. 15 is an individual residing in the State of Colorado.

5   2.      Plaintiff JANE DOE NO. 16 is an individual residing in the State of Minnesota.

6   **Defendants**

7   3.      GIRLSDOPORN.COM is a business organization, form unknown, with its principal place of

8   business in San Diego County, California.

9   4.      BLL MEDIA, INC. is a California corporation with its principal place of business in San Diego

10  County, California.

11  5.      BLL MEDIA HOLDINGS, LLC is a Nevada limited liability company with its principal place

12  of business in Clark County, Nevada.

13  6.      DOMI PUBLICATIONS, LLC is a Nevada limited liability company with its principal place of

14  business in Clark County, Nevada.

15  7.      EG PUBLICATIONS, INC. is a California corporation with its principal place of business in

16  San Diego County, California.

17  8.      M1M MEDIA, LLC is a California limited liability company with its principal place of business

18  in San Diego County, California.

19  9.      BUBBLEGUM FILMS, INC. is a business organization, form unknown, with, on information

20  and belief, its "principal place of business" in Port Vila, Vanuatu.

21  10.     OH WELL MEDIA LIMITED is a business organization, form unknown, with, on information

22  and belief, its "principal place of business" in Port Vila, Vanuatu.

23  11.     MERRO MEDIA, INC. is a California corporation with its principal place of business in San

24  Diego County, California.

25  12.     MERRO MEDIA HOLDINGS, LLC is a Nevada limited liability company with its principal

26  place of business in Clark County, Nevada.

27  13.     CLOCKWORK PRODUCTIONS, INC. is a corporation.  Plaintiffs are unaware of what state or

28  foreign nation it is incorporated in.

14.     UHD PRODUCTIONS, LLC is a limited liability company organized in the State of Wyoming with its principal place of business in San Diego, California.

15.     BUBBLEGUM FILMS, LTD is a business organization, form unknown, with, on information and belief, its "principal place of business" in Port Vila, Vanuatu.

16.     GREENHILL SERVICES, LTD. is a corporation.  Plaintiffs are unaware of what state or foreign nation it is incorporated in.

17.     SIDLE MEDIA LIMITED is a corporation.  Plaintiffs are unaware of what state or foreign nation it is incorporated in.

18.     On information and belief, GIRLSDOPORN.COM, BLL MEDIA, INC., BLL MEDIA HOLDINGS, LLC, DOMI PUBLICATIONS, LLC, EG PUBLICATIONS, INC., M1M MEDIA, LLC, BUBBLEGUM FILMS, INC., OH WELL MEDIA LIMITED, MERRO MEDIA, INC., MERRO MEDIA HOLDINGS, LLC; CLOCKWORK PRODUCTIONS, INC., UHD PRODUCTIONS, LLC, BUBBLEGUM FILMS, LTD., GREENHILL SERVICES, LTD, SIDLE MEDIA LIMITED and ROES 1 - 250 ("THE ENTITY DEFENDANTS") are entities in the business of online pornography production, distribution, and sales.  On information and belief, THE ENTITY DEFENDANTS own and/or operate numerous online pornography websites, including, without limitation, www.girlsdoporn.com, www.girlsdotoys.com and www.mompov.com.

19.     MICHAEL J. PRATT ("PRATT") is an individual residing in San Diego County, California. On information and belief, he is a sales agent and representative, and the majority or sole shareholder, managing member, and/or chief executive officer of each of THE ENTITY DEFENDANTS.

20.     ANDRE GARCIA ("GARCIA") is an individual residing in San Diego County, California.  On information and belief, he is a sales agent and representative for each of THE ENTITY DEFENDANTS – as well as a participant and "actor" in their pornography.

21.     MATTHEW WOLFE ("WOLFE") is an individual residing in San Diego County, California. On information and belief, he is a sales agent and representative for each of THE ENTITY DEFENDANTS – as well as a videographer of their pornography.

22.     RIVA YOUSIF ("YOUSIF") is an individual residing in San Diego County, California.

23.     THEODORE GYI ("GYI") is an individual residing in San Diego County, California.

COMPLAINT

24.   VALERIE MOSER ("MOSER") is an individual residing in San Diego County, California.

25.   CLIFF ELLIS ("ELLIS") is an individual, who at all relevant times discussed herein, resided in San Diego County, California.

26.   DOUGLAS WIEDERHOLD ("WIEDERHOLD") is an individual that Plaintiffs are informed and believe and thereon allege resides in Clark County, Nevada.

27.   KAILYN WRIGHT ("WRIGHT") is an individual that Plaintiffs are informed and believe and thereon allege lives in Maricopa County, Arizona.

28.   On information and belief, ROES 251 – 500 are other shareholders, members, officers, sales agents, representatives, videographers, and/or "actors" of THE ENTITY DEFENDANTS.

29.   Plaintiffs are ignorant of the true names, capacities, and/or liabilities of defendants sued herein as ROES 1 - 550, inclusive, and therefore sue these defendants by such fictitious names and allege that ROES 1 - 550 are responsible in some manner for the occurrences herein alleged.  Plaintiffs will amend this complaint to allege their true names, capacities, and/or liabilities when ascertained.

30.   In doing all things alleged herein, including, without limitation, corresponding, negotiating, and contracting with Plaintiffs, Defendants were agents, servants, representatives, partners, joint venturers, affiliates, parents, subsidiaries, and/or employees of each other in the acts and/or omissions herein alleged.  Defendants were and are acting within the course and scope of their authority as such agents, servants, representatives, partners, joint venturers, affiliates, parents, subsidiaries, and/or employees and with the permission, authorization, consent, and ratification of each other.

31.   In doing all things alleged herein, including, without limitation, corresponding, negotiating, and contracting with Plaintiffs, THE ENTITY DEFENDANTS, PRATT, GARCIA, WOLFE, GYI, MOSER, YOUSIF, ELLIS, WRIGHT, and ROES 251 – 550 acted as alter egos of each other.  In particular, they: (a) commingled their funds and other assets, failed to segregate funds between them, and have without authorization diverted corporate funds and assets for noncorporate uses; (b) treated each other's assets as their own; (c) issued shares of one other to themselves and third parties haphazardly and without authority; (d) held themselves out as being personally liable for the debts of each other; (e) failed to maintain minutes and corporate records, and confused of the records of the separate entities; (f) used the same business locations and employed the same employees; (g) failed to

1  adequately capitalize the entities; (h) used each other as a conduit for a single venture of themselves; (i)

2  failed to maintain arm's length relationships among themselves; and (j) diverted assets without

3  consideration from/to one another to the detriment of creditors, including Plaintiffs. Recognition of the

4  privilege of separate existences between these defendants would promote injustice, unfairness, and

5  fraud. Any separateness is to be disregarded. As such, Defendants are jointly and severally liable in

6  this action as alter egos.

7  **JURISDICTION AND VENUE**

8  32.   This Court has jurisdiction over Defendants as they are physically present in San Diego County,

9  California and/or because Defendants committed the subject acts and omissions in San Diego County,

10  California.

11  33.   Venue is proper as San Diego County is where Defendants reside and have their principal place

12  of business, the subject contracts were entered into, and/or the obligations and liability arose.

13  **FACTUAL ALLEGATIONS**

14  **Defendants' Business Scam: Lie to Young Women and Con them into Online Pornography**

15  34.   Together, PRATT, GARCIA, WOLFE, WIEDERHOLD, GYI, MOSER, YOUSIF, ELLIS,

16  WRIGHT and the rest of Defendants operate a San Diego-based pornography business, which

17  irreparably damages the lives of young women from San Diego and across the country. The operation

18  appears to be started by PRATT and WIEDERHOLD around 2010.

19  35.   Defendants collectively run pornography websites, the main website being

20  www.girlsdoporn.com, a subscription-based amateur pornography website, which gets more traffic than

21  the San Diego Padres website. Defendants also collectively operate subscription based websites

22  www.mompov.com and www.girlsdotoys.com. In addition, Defendants have numerous free websites

23  where they publish short clips of the videos as advertisements for their subscription-based websites.

24  Defendants also run advertising websites that link to each of their subscription-based websites. For

25  example, Defendants' website www.girls-do-porn.com, which features Plaintiffs' likenesses, contains

26  advertisements and links to www.mompov.com. Likewise, Defendants' website www.mompov.net,

27  contains advertisements and links to www.girlsdoporn.com.

28  36.   Although Defendants use several entities to run the three subscription websites, they are

1    inextricably linked as a single operation run by a handful of people out of the same office space in
2    downtown San Diego, California, operated by the same credit card processing companies, and utilizing
3    the same sham offshore entities set up by the infamous GT Group, Ltd, which has laundered billions of
4    dollars for nefarious business operations such as the Sinoalan Cartel and Ukrainian gun runners.   GT
5    Group Ltd. operates out of the tiny Pacific island nation, Vanuatu.  It incorporates thousands of shell
6    companies that, on paper, are owned by locals.  GT Group Ltd pays locals on Vanuatu to sign the
7    documents necessary to keep its shell companies in good standing with the local as the sole owner,
8    officer, director and shareholder.  However, the locals play no part in the shell companies other than
9    signing the documents.  GT Group Ltd then contracts with people seeking to utilize the anonymity of
10   an offshore company.  Defendant Oh Well Media Limited, for example, is owned on paper by Abigail
11   Kalopung—a local on Vanuatu.  She is the sole shareholder, officer and director of Oh Well Media Ltd.
12   on paper.  Defendants, however, control Oh Well Media Limited Defendants, giving them the ability to
13   open bank accounts and enter into contracts in the company's name.  Defendants' website indicates that
14   it uses Oh Well Media Limited as its 2257 custodian.[1]  Abigail Kalopung appears to own about fifty of
15   these shell companies on paper.

16   37.     The young women appearing in Defendants' amateur pornography come from good families,
17   have never appeared in pornography before, are often paying their way through school, and are just
18   beginning their careers and adulthood.  So, there is only way Defendants can convince these women to
19   have sex on film or produce other adult video material: Defendants lie to them.

20   38.     Defendants advertise themselves across the country as a legitimate Southern California
21   modeling agency - on Craigslist and other websites.  Defendants' Craigslist advertisements fail to even
22   mention that they are an online pornography company.  Instead, they claim they are seeking models,
23   and often times contain a link in the Craigslist advertisement to www.beginemodelling.com or
24   www.modelinggigs.com.  Neither of these websites mention anything about pornography.  Using the
25   impression that they are applying for a typical modeling gig for, at most, swimsuit or lingerie, these

26   ---
[1] 18 U.S.C. 2257 requires pornography companies to collect certain information from all persons appearing in the
27   pornographic films the produce to ensure they are over 18 years of age.  Despite being operated out of San Diego,
     Defendants list Oh Well Media Limited, Sidle Media Ltd. and Bubblegum Films, Inc. as their 2257 custodians on their
28   websites www.girlsdoporn.com, www.girlsdotoys.com and www.mompov.com, respectively.  The entities have the same
     address in Vanuatu--- Poteau 540 208, Ave Due Capitain Cook, Seaside, Port Vila,Vanuatu 65774.

1  sham websites lure women into providing Defendants with pictures of themselves and their name, age,

2  height, weight, state, city, email, and phone number. If Defendants feel they have attracted a proper

3  target, they reach out to the women by phone and/or email in order to feel the women out more.  Once

4  on the phone, Defendants are able to brazenly lie to the women without the fear of putting their lies in

5  writing, and in hopes of being able to cajole the women into filming a pornography.

6  39.    When the young women ask Defendants where they will distribute the video, Defendants assure

7  them that they will not post the video online (or cause it to be so posted), they will not distribute the

8  video in the United States (or cause is to be so distributed), and they will keep each woman anonymous.

9  Defendants represent the videos will be on DVDs overseas (usually in Australia or New Zealand since

10  Defendants' themselves are from there and have an accent) and for private use.

11  40.    If still not convinced by their lies, Defendants provide "references" who Defendants claim

12  previously shot a video (but, whose video is not yet released), to vouch for Defendants and promise the

13  same security, limited distribution, and anonymity.  In addition, Defendants use several references that

14  either have not shot a video, or who know the videos are being posted online but are comfortable lying

15  to the prospective victims in order to earn a few dollars.  Defendants coach the references on how to

16  handle various questions from the prospective women. As further incentive to lie to the women,

17  Defendants pay the reference more money if the prospective victim they speak with actually ends up

18  filming a video. Defendant WRIGHT is such an individual.  WRIGHT filmed a video for Defendants

19  that was released in the Spring of 2015.  WRIGHT was aware of Defendants' websites, that the

20  women's names would be released, but nevertheless acted as a reference for Defendants and repeatedly

21  lied to prospective victims by telling them the videos would not be posted online, and would instead be

22  released on DVDs in foreign countries.

23  41.    In their discussions with these young woman, Defendants use aliases and mention nothing about

24  their website(s) where they plan to post the videos, or the websites on which they plan to publically

25  promote and advertise the videos. Defendants also mention nothing about: (a) all of the other young

26  women whose lives they have irreparably damaged earlier by Defendants' video publication and

27  promotion (b) all of the other young women imploring them to stop and to take down their videos; and

28  (c) all of the complaints that they (and their legal counsel) have received from other young women and

**COMPLAINT**

1  their families.

2  42.    After Defendants lie to the young women, they book rooms at upscale San Diego County hotels,

3  most often at major high-end chains in downtown San Diego (e.g., Hilton, Hyatt, Marriot). If the

4  young women are not in Southern California, Defendants pay for their airfare to San Diego.

5  43.    Defendant YOUSIF, MOSER or GARCIA typically pick the women up from the airport. In the

6  car, they reassure the women Defendants will not publish the videos on the Internet.

7  44.    Then, without hotel knowledge and consent, and, on information and belief, without any license

8  or permit whatsoever, Defendants sneak videography equipment into the hotel – hiding the equipment

9  in large suitcases – in order to produce the amateur pornography.

10  45.    Once the young women are confined to the hotel room, Defendants tell the women they look

11  nervous, need to relax and then try to persuade them to drink alcohol and/or smoke marijuana, which

12  GARCIA consumes regardless of whether the women choose to do so. YOUSIF acts as the makeup

13  artist for most women. While applying makeup, YOUSIF again reassures the women the video will not

14  be released online, and generally appeases any concerns the women express.

15  46.    Before filming begins, GARCIA asks the women to take off their clothes so that they may take

16  pictures to send to the "boss." After sending the pictures to the boss. Defendants routinely tell the

17  women, after they have flown to San Diego, are naked, and confined in a hotel room, that the boss

18  cannot pay them the agreed upon price because the woman has cellulite, a bruise, breast reduction

19  scars, too small breasts, etc. Defendants routinely accuse the women of sending them misleading

20  pictures. If the woman refuses to shoot the film for less money, Defendants threaten to sue the woman

21  for the price of the flight and hotel room Defendants had paid for or threaten to cancel the woman's

22  return flight, which Defendants booked and have control over.   The vast majority of women flown to

23  San Diego are paid less than the agreed upon amount when they decided to board a plane and fly across

24  the country.

25  47.    After the repeated misrepresentations, and sometimes after alcohol and marijuana Defendants

26  provide, and while confined in a hotel room with unknown men, Defendants present the women with

27  documents to sign: (a) often under duress, coercion, and/or while distracting or rushing them; (b) while

28  continuing to orally misrepresent their intent for the video's eventual distribution; (c) while continuing

1   to fraudulently omit the material facts referenced herein (e.g., that they work for a San Diego-based

2   pornography website that has damaged other young women's lives); and (d) often lying about the

3   purported nature and effect of the documents. The documents are full of legalese and fail to mention

4   www.girlsdoporn.com. Instead, the documents indicate Defendants work for "Bubblegum Casting" or

5   "BLL Media." If the names of these companies are Googled, which several women have done when

6   presented with the documents, the companies have sham websites that give the impression they are

7   legit media companies. Nothing on either of these websites indicates the videos are destined for

8   www.girlsdoporn.com, any of Defendants' other websites, or free websites like www.pornhub.com.

9   48.    A few months after filming, despite their earlier representations, Defendants release the videos

10   on, at least, www.girlsdoporn.com (their monthly subscription-based website) and www.girls-do-

11   porn.com (a free website with clips of the videos that then directs the user to www.girlsdoporn.com).

12   Defendants also release/license all or part of the videos all over the Internet on a multiple of free

13   pornography websites – in part, to advertise www.girlsdoporn.com with the images and likenesses of

14   the young women. Defendants post clips of the videos on popular websites like www.youporn.com or

15   www.pornhub.com as advertisements. www.pornhub.com is the 37th most trafficked website in the

16   world, with more traffic than www.eBay.com, www.Bing.com and www.msn.com. Some of the clips

17   of the videos Defendants post as advertisements on www.pornhub.com and www.youporn.com have

18   been viewed over 40 million times.

19   49.    Interestingly, and by no accident, GARCIA'S (and any other male participant's) face is

20   intentionally cut from the frame and not shown in any video released by Defendants. Soon after the

21   release, someone who knows one of the young women will notify them the video is online. This

22   becomes the first time the young women have ever heard of Defendants' main website:

23   www.girlsdoporn.com.

24   50.    When the young women reach out to Defendants, they discover Defendants have changed their

25   phone numbers (they use disposable phones and/or changeable Internet phone numbers) and have also

26   used fake names (e.g., PRATT often uses "Mark," GARCIA often uses "Jonathan," and WOLFE often

27   uses "Ben" or "Isaac"). Defendants then refuse to talk to the women, hang up on them, and/or block

28   their calls. If the women get in contact with Defendants' counsel, they refuse to even give Plaintiffs

1    copies of any documents signed and threaten them with legal action.

2    51.      After Defendants cause the videos to be distributed online, Defendants, their subscribers, and/or

3    Internet stalkers release Plaintiffs' real names online, usually on blogs followed by "fans" and

4    subscribers of www.girlsdoporn.com. Defendants also post pictures of Plaintiffs on

5    www.pornwikileaks.com, which they bought in November 2015. The posts on

6    www.pornwikileaks.com also contain links to the women's social media accounts, their family's social

7    media accounts, high school information and other personal information that would garner attention

8    from people that want to find out intimate details about the women. Defendants then embed

9    advertisements inside the posts on www.pornwikileaks.com that link to their subscription websites. As

10    a result (of which Defendants are cognizant), third parties often then stalk, harass, bully, and blackmail

11    the young women and their families – online, by telephone, and in-person. A true and correct copy of

12    such an advertisement is attached hereto as Exhibit A.

13    52.      Once the woman's video is released, it spreads like wildfire through their hometowns, colleges,

14    high schools, and workplace. Within a day or two, almost every person the woman knows has been

15    sent a link to the video. Because of Defendants, some of these young women lose relationships with

16    friends, significant others, and family. Some lose or change jobs, and some are forced to leave their

17    school. Months to years after the videos, many are still harassed by strangers on the Internet. And

18    almost all have suffered severe psychological and emotional damage -- some have even considered and

19    attempted suicide.

20    53.      Below, are more specific facts and claims of two young women.

21    **JANE DOE NO. 15**

22    54.      In February 2016, Defendants posted an advertisement on Craigslist.com in the gigs/modeling

23    section for the Denver area, seeking young women for adult modeling. The advertisement included a

24    link to www.beginmodeling.com, which is a website the features modeling pictures, not pornography.

25    55.      That same month, JANE DOE NO. 15, having reviewed the www.beginmodeling.com website,

26    responded to the advertisement thinking it was for modeling.

27    56.      On February 19, 2016, JANE DOE NO. 15 received an email from "Jonathan N" from

28    jobs@beginmodeling.com and on behalf of Defendants. The email said,

> This is a legitimate adult gig for an established Southern California company. You will make $4000 CASH for your first shoot which is paid up front, consistent work is also available, we offer solo toy scenes for $1000. You can do BOTH scenes in one trip for $5000.
>
> ...
>
> None of your personal information will be given out in the video or afterwards , no names etc are used in the video.

[Formatting and sics in original.]

57.     A few days later, JANE DOE NO. 15 spoke to "Jonathan" on the telephone. During the conversation, Jonathan increased the previous offer by telling JANE DOE NO. 15 she would be paid $5,000 for the adult film by itself, which would involve five sexual positions, which would each take five to seven minutes to film. JANE DOE NO. 15 asked Jonathan several times during the phone call whether the video would be posted on the Internet and he assured her each time that it would not. Instead, Jonathan told her the video would be distributed on DVD in Australia and United Kingdom and would never be released or be seen in the United States. Jonathan also told JANE DOE NO. 15 that he would provide references with whom she could speak to answer any of her questions.

58.     On February 24, 2016 at 7:23pm, JANE DOE NO. 15 received an email from "Jonathan N jobs@beginmodeling.com" on behalf of Defendants that stated:

> This is Kaitlin, she is 19.
> She is from Scottsdale, AZ and has done 2 shoots with us.
> We pretty much paid for her breast job and she is recovering.
> She also worked with the same talent that you will work with
> Here is her cell: (480) ***-****,

[Formatting and sics in original.] The email had photographs of defendant WRIGHT attached.

59.     An hour or so after this email, on February 24, 2016, JANE DOE NO. 15 received a text message from (480) ***-****, which is the same phone number Jonathan provided for WRIGHT. The following text exchange occurred between JANE DOE NO. 15 and WRIGHT (Defendants' paid agent):

WRIGHT:          Hey [Jane Doe No. 15] my name is Kailyn- Jonathon gave me your contact info! Im sure you're nervous or maybe even sketched out a little bit but you seriously have nothing to worry about! It's completely legit, once you land (if you're flying in from out of town that is*) you will be picked up in a nice car and taken to

1    where you are shooting your scene and all that OH AND they pay you in cash up front!

2
3    Okay so I am a very easily sketched out person when it comes to stuff like this I
     was very Nervous but once I got there I felt like a complete idiot because I
4    realized I had nothing to worry about haha - lowkey was a little embarrassed
     haha (emojis omitted) The model is super hot which is nice (emojis omitted) and
5    the photographer is super cool

6    It's you, the model, and the photographer in the room and no one else so it's not
     uncomfortable or anything which is chill Girl if you have any questions please
7    **DO NOT**hesitate to text me or call or FaceTime or whatever!!!! (emojis
     omitted)
8

9    JANE DOE NO. 15:   Hey thank you for being so nice! That's exactly where I am at!

10                      These aren't distributed in America right?

11   WRIGHT:            No prob! And no they aren't!

12
     JANE DOE NO. 15:   Is there anyway they can get back to the US? I just have this shaky thing
13                      with this guy I like love and I can't have anyone find out
14

15   WRIGHT:            No no no you're totally fine!

16                      That's what I was worried about but there is absolutely no way anyone will find
17                      out

18   JANE DOE NO. 15:   Where are the videos going exactly? Like DVDs I think he said in Australia UK,
                        but like DVDs or .. ?
19
20   WRIGHT:            Yeah so it goes out to wealthier countries; yea DVDs and stuff like that but
                        nothing online!

21   [All sics in original.]   True and correct copies of these messages are attached hereto as Exhibit B.

22   60.      A few days later, JANE DOE NO. 15 video conferenced with "Jonathan" via FaceTime, who

23   she has now identified as defendant PRATT.  During the conversation, PRATT again reassured her the

24   video would not be posted on the Internet.

25   61.      On February 28, 2016, JANE DOE NO. 15 flew to San Diego.  She arrived around 8:30am.  Her

26   return flight was scheduled for 7:45pm that same day.  When she landed, nobody came to pick her up

27   as she had discussed with PRATT the prior day.  She called the phone number she had for PRATT

28   several times but he did not answer.  Eventually JANE DOE NO. 15 was picked up from the airport by

1 defendant GYI. The two drove around for a few hours while GYI tried to contact PRATT, who was not

2 answering his phone. While driving around, JANE DOE NO. 15 spoke with GYI about the distribution

3 of the video. GYI told her the videos would not be online and even went as far as to mention how he

4 liked the authenticity of making a hard copy version because online pornography seemed so cheap to

5 him. Eventually, around 1:00pm, GYI finally spoke with someone on the phone and the two went to a

6 hotel in San Diego.

7 62.   When she got in the room, it was just GYI and JANE DOE NO. 15. A makeup artist that JANE

8 DOE NO. 15 is informed and believes to be defendant YOUSIF, came into the room and did her

9 makeup. GARCIA eventually came in the room, but immediately went to the bathroom and began

10 vomiting. GARCIA came out of the bathroom and had paperwork with him. GARCIA reiterated that

11 the contract was stating that the video would not be online, would only be on DVD and sent to

12 countries outside of the United States. JANE DOE NO. 15 asked GARCIA if her name would ever be

13 released and he confirmed that it would not. While they were speaking, GYI interjected that the

14 contract was just saying the video would not go on the Internet and would be distributed outside the of

15 the United States. GYI and GARCIA rushed JANE DOE NO. 15 through everything telling her that the

16 shoot would take several hours—despite the previous representations that it would be 30 minutes of

17 filming. At this time, JANE DOE NO. 15's return flight was only a few hours away.

18 63.   During the shoot, JANE DOE NO. 15 told Defendants she was not comfortable with several

19 sexual acts they asked her to perform. Defendants told her that she had already been paid and that she

20 had to do them.

21 64.   Defendants paid JANE DOE NO. 15 $2,000 less than she was promised before flying to San

22 Diego. After the shoot, she sent PRATT a text message telling him that he owed her more money.

23 PRATT responded by trying to justify the underpayment:

24     "Yeah you're bruised up I can't have that."

25     "Honestly .. My partner and I were not very impressed with the photos. You have bruises over

26     your body and cuts on your wrists and arms."

27     "Photos is one thing, in person is another. You were paid very well. $3,000 is about 4x more

28     then the regular pay girls get, you were also offered a solo tomorrow for $1,000."

14

1   65.    A month or two later, Defendants published JANE DOE NO. 15's video on their websites.

2   Links to the video were sent to her friends and family.  JANE DOE NO. 15 sent a text message to

3   WRIGHT telling WRIGHT that she had lied to her.  WRIGHT never responded.

4   **JANE DOE NO. 16**

5   66.    Around February 2014, Defendants posted an advertisement on Craigslist.com in the

6   gigs/modeling seeking young women for adult modeling.

7   67.    JANE DOE NO. 16 responded to the advertisement and was led to www.modelinggigs.com[2],

8   which, like Defendants' other bogus website www.beginmodeling.com, also fails to mention

9   pornography and is gives the viewer the impression it is a typical modeling company.

10  68.    After expressing interest in the Craigslist advertisement for modeling, JANE DOE NO. 16

11  received an email from Mark@ModelingGigs.com and spoke with "Mark" on the phone, on behalf of

12  Defendants.  During the phone call, "Mark" told JANE DOE NO. 16 the gig was an adult film that

13  involved very basic sex that would be distributed in New Zealand on DVD and would never be

14  available in the United States or on the Internet.   Pratt, who has an accent, also advised JANE DOE

15  NO. 16 that he was from New Zealand, which further helped sell his lies.

16  69.    JANE DOE NO. 16 also spoke with references provided by Defendants.  The references assured

17  her the video would not be posted online or be available in the United States.

18  70.    On August 1, 2014, JANE DOE NO. 16 flew to San Diego.  She was picked up by GARCIA

19  and "Mark," who she is now informed and believes is defendant PRATT.  They drove JANE DOE NO.

20  16 and her friend, whom she had brought with her for safety reasons, to the Torrey Pines Hilton.  They

21  were unable to film that night, so they dropped JANE DOE NO. 16 and her friend at the beach. While

22  at the beach, JANE DOE NO. 16 received a text message from PRATT asking her is she would come

23  spend the night in his bed for $400.  She declined.

24  71.    The next day around noon, PRATT, GARCIA and ELLIS showed up at the hotel with the video

25  equipment.  Once there, they provided JANE DOE NO. 16 several alcoholic drinks from the hotel bar,

26  telling her it would calm her nerves.  Defendant ELLIS did JANE DOE NO. 16's makeup while

27  _____

[2] Upon further inspection, www.modelinggigs.com is filled with stock photographs of models that one can purchase from Shutterstock.com for a few dollars. Defendants never actually photographed the models depicted on this website, despite

28  claiming to have done so.

1   PRATT and GARCIA set up the equipment. PRATT and GARCIA continued to reassure JANE DOE

2   NO. 16 her video would not be released on the Internet and would be released New Zealand and

3   Australia. When JANE DOE NO. 16 asked PRATT what would happen if she "chickened out" and did

4   not film the video, PRATT told her she would be forced to reimburse him for the cost of her flight, her

5   friend's flight and the hotel. JANE DOE NO. 16 asked PRATT if she could only do the photoshoot and

6   not do the adult film, and PRATT told her that she had to do the adult film because the photoshoot was

7   useless without the film. JANE DOE NO. 16 therefore thought she would be forced to repay PRATT

8   unless she did the adult film.

9   72.   Thereafter, PRATT provided documents for her to sign. PRATT and GARCIA told JANE DOE

10   NO. 16 that the documents ensured the video would only be on DVD and distributed in Australia and

11   New Zealand, as they had previously told her. When JANE DOE NO. 16 tried to read it in detail,

12   PRATT and GARCIA told her they needed to get the shoot started, that she could read it in detail after

13   the shoot was finished and that they would get her a copy after the shoot. They told her to just fill out

14   the information and sign where she needed to sign.

15   73.   After the documents were filled out, PRATT coached JANE DOE NO. 16 how to respond to

16   interview questions—telling her things like she needed to act bubbly and excited to be there. During

17   the shoot, ELLIS would come into the room on breaks and bring JANE DOE NO. 16 another alcoholic

18   drink.

19   74.   During the filming, PRATT instructed JANE DOE NO. 16 that she needed to perform oral sex

20   on GARCIA. JANE DOE NO. 16 told PRATT that she was uncomfortable doing that. ELLIS, who had

21   come back into the room, got JANE DOE NO. 16 another drink. PRATT then told her that they had

22   already paid her so she was required by contract to do it.

23   75.   After filming was finished, PRATT, ELLIS, and GARCIA drove JANE DOE NO. 16 and her

24   friend to the mall, and then to PRATT's apartment for a photoshoot.

25   76.   According to Defendants' website, www.girls-do-porn.com, Defendants first published JANE

26   DOE NO. 16's video on September 8, 2014. JANE DOE NO. 16 learned of the video in March 2015.

27   ///

28   ///

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

## INTENTIONAL MISREPRESENTATION

### (All Plaintiffs against All Named Defendants and ROES 1 - 500)

77.     Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as though set forth herein, including, without limitation, the agency and alter ego allegations.

78.     During Plaintiffs' discussions and negotiations with Defendants before each made an adult video for Defendants (and simultaneous with Plaintiffs' attempted review of any purported agreements), Defendants represented: they would not post the videos online (or cause such publication), they would not distribute the videos in the United States (or cause such publication), and that Plaintiffs would remain anonymous.  Defendants further represented at all times to Plaintiffs that would not cause the videos to be posted online or distributed in the United States.  Defendants at all times assured Plaintiffs there was nothing to worry about, promised privacy, and said nobody Plaintiffs knew would see the videos.  Defendants caused other women to reiterate these representations to Plaintiffs.  Finally, Defendants represented they would pay Plaintiffs certain sums of money; as set forth above, some of Plaintiffs did not receive the sums represented.

79.     Those representations were false.

80.     Defendants intended that Plaintiffs rely on the above representations when each young woman decided to make an adult video.

81.     Plaintiffs reasonably relied on the representations.

82.     Plaintiffs have been harmed by their reasonable reliance in that Defendants published their videos online, published their videos in the United States, and released Plaintiffs' real names.

83.     Plaintiffs' reliance on these false representations was a substantial factor in causing their harm. Plaintiffs have been harmed in an amount to be proven at trial, but that is, at least, $500,000 per plaintiff, and consists of, at least: (a) serious emotional distress, including, but not limited to, bullying, blackmail, loss of eating, loss of sleep, enduring fright, shock, nervousness, anxiety, depression, embarrassment, mortification, shame, and fear; (b) compensatory damages, including, but not limited to the difference in value in what the parties exchanged (i.e., the money Plaintiffs received for what they

17

1 | were told was *limited* distribution and what Defendants profited through *global* distribution); and (c)

2 | restitution / unjust enrichment damages (same calculation as the compensatory damages). The Plaintiff

3 | also seek injunctive relief.

4 | 84.     Defendants were acting individually and on behalf of each other when they made each of these

5 | representations and, when one of them made a representation, the others ratified the representation

6 | and/or knew of the misrepresentation and failed to correct it.

7 | 85.     Defendants also acted in a conspiracy when they committed this fraud as: (1) each of

8 | Defendants had knowledge of and agreed to both the objective and course of action to injure Plaintiffs;

9 | (2) pursuant to their agreement, Defendants intentionally mislead Plaintiffs at the time and place and

10 | via the manner set forth above; and (3) pursuant to their agreement, Defendants injured Plaintiffs, as set

11 | forth above.

12 | 86.     Defendants' actions were fraudulent, oppressive, and malicious and therefore warrant an award

13 | of punitive damages pursuant to Section 3294 of the California Civil Code.

14 | **SECOND CAUSE OF ACTION**

15 | **FRAUDULENT CONCEALMENT**

16 | **(All Plaintiffs against All Named Defendants and ROES 1 – 500)**

17 | 87.     Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as

18 | though set forth herein, including, without limitation, the agency and alter ego allegations.

19 | 88.     During Plaintiffs' discussions and negotiations with Defendants before each made an adult

20 | video for Defendants (and simultaneous with Plaintiffs' attempted review of any purported

21 | agreements), Defendants actively concealed their true identities (their individual names and, more

22 | importantly, the identity of www.girlsdoporn.com, on which they intended to publish Plaintiffs nude

23 | photos and sex acts). At all these times, they actively concealed the fact their true intention was to post

24 | the videos online and distribute them in the United States – or cause such publication and distribution.

25 | At all these times, Defendants also concealed the facts regarding: (a) all of the other young women

26 | whose lives they have irreparably damaged earlier by Defendants' video publication and promotion; (b)

27 | all of the other young women imploring them to stop and to take down their videos; and (c) all of the

28 | complaints that they (and their legal counsel) have received from other young women and their

1   families.

2   89.    Defendants owed Plaintiffs duties to disclose this information as, among other reasons, they

3   provided some information to Plaintiffs during correspondence, and during contract and business

4   negotiations.

5   90.    Defendants knew of, but knowingly concealed, the true facts regarding their identifies, their

6   website, their business, their video distribution, and the likelihood of injury to and harassment of

7   Plaintiffs.

8   91.    Defendants concealed these facts with the intent to induce Plaintiffs to make the adult videos.

9   92.    The concealed information was objectively material to any reasonable person and caused

10   Plaintiffs to make the adult videos.

11   93.    Plaintiffs justifiably relied on Defendants' false representations.

12   94.    Defendants' failure to disclose these material facts to Plaintiffs was substantial factor in causing

13   their harm.  Had Plaintiffs known of the undisclosed facts, they would not have made the adult videos.

14   95.    Plaintiffs' reliance on these false representations was a substantial factor in causing their harm.

15   Plaintiffs have been harmed in an amount to be proven at trial, but that is, at least, $500,000 per

16   plaintiff, and consists of, at least: (a) serious emotional distress, including, but not limited to, bullying,

17   blackmail, loss of eating, loss of sleep, enduring fright, shock, nervousness, anxiety, depression,

18   embarrassment, mortification, shame, and fear; (b) compensatory damages, including, but not limited to

19   the difference in value in what the parties exchanged (i.e., the money Plaintiffs received for what they

20   were told was *limited* distribution and what Defendants profited through *global* distribution); and (c)

21   restitution / unjust enrichment damages (same calculation as the compensatory damages).  The Plaintiff

22   also seek injunctive relief.

23   96.    Defendants were acting individually and on behalf of each other when they made each of these

24   omissions and, when one of them made an omission, the others ratified the omission and/or knew of the

25   omission and failed to correct it.

26   97.    Defendants also acted in a conspiracy when they committed this fraud as: (1) each of

27   Defendants had knowledge of and agreed to both the objective and course of action to injure Plaintiffs;

28   (2) pursuant to their agreement, Defendants intentionally mislead Plaintiffs at the time and place and

1  via the manner set forth above; and (3) pursuant to their agreement, Defendants injured Plaintiffs, as set

2  forth above.

3  98.    Defendants' actions were fraudulent, oppressive, and malicious and therefore warrant an award

4  of punitive damages pursuant to Section 3294 of the California Civil Code.

5  **THIRD CAUSE OF ACTION**

6  **FALSE PROMISE**

7  **(All Plaintiffs against All Named Defendants and ROES 1 - 500)**

8  99.    Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as

9  though set forth herein, including, without limitation, the agency and alter ego allegations.

10  100.   During Plaintiffs' discussions and negotiations with Defendants before each made an adult

11  video for Defendants (and simultaneous with Plaintiffs' attempted review of any purported

12  agreements), Defendants made promises to Plaintiffs that: they would not post the videos online (or

13  cause such publication), they would not distribute the videos in the United States (or cause such

14  publication), and Plaintiffs would remain anonymous. Defendants promised Plaintiffs that would not

15  cause the videos to be posted online or distributed in the United States. Defendants promised Plaintiffs

16  there was nothing to worry about, promised privacy, and promised nobody they knew would see the

17  videos. Finally, Defendants represented they would pay Plaintiffs certain sums of money; as set forth

18  above, some of Plaintiffs did not receive the sums represented.

19  101.   Defendants' affirmative promises were of material fact and important as Plaintiffs would not

20  have otherwise made the adult videos.

21  102.   Defendants did not intend to perform these promises at the times they made them, and have not

22  performed as promised. Defendants knew their promises were false and merely wanted Plaintiffs to

23  make the videos for Defendants' benefit.

24  103.   Defendants intended to induce Plaintiffs to alter their positions in reliance on the promises by

25  making the adult videos.

26  104.   Plaintiffs justifiably and reasonably relied on Defendants' promises and Defendants' affirmative

27  promises were an immediate cause of Plaintiffs' conduct.

28  105.   Defendants did not perform the promises.

106.   As an actual and proximate cause of Defendants' false promises and Plaintiffs' justifiable

reliance, Plaintiffs were damaged in that Defendants posted the videos online, distributed the videos in

the United States, and released Plaintiffs' names.

107.   Plaintiffs' reliance on these false representations was a substantial factor in causing their harm.

Plaintiffs have been harmed in an amount to be proven at trial, but that is, at least, $500,000 per

plaintiff, and consists of, at least: (a) serious emotional distress, including, but not limited to, bullying,

blackmail, loss of eating, loss of sleep, enduring fright, shock, nervousness, anxiety, depression,

embarrassment, mortification, shame, and fear; (b) compensatory damages, including, but not limited to

the difference in value in what the parties exchanged (i.e., the money Plaintiffs received for what they

were told was *limited* distribution and what Defendants profited through *global* distribution); and (c)

restitution / unjust enrichment damages (same calculation as the compensatory damages). The Plaintiff

also seek injunctive relief.

108.   Defendants were acting individually and on behalf of each other when they made each of these

omissions and, when one of them made a false promise, the others ratified it, and/or knew of the false

promise and failed to correct it.

109.   Defendants also acted in a conspiracy when they committed this fraud as: (1) each of

Defendants had knowledge of and agreed to both the objective and course of action to injure Plaintiffs;

(2) pursuant to their agreement, Defendants intentionally mislead Plaintiffs at the time and place and

via the manner set forth above; and (3) pursuant to their agreement, Defendants injured Plaintiffs, as set

forth above.

110.   Defendants' actions were fraudulent, oppressive, and malicious and therefore warrant an award

of punitive damages pursuant to Section 3294 of the California Civil Code.

### FOURTH CAUSE OF ACTION

### NEGLIGENT MISREPRESENTATION

**(All Plaintiffs against All Named Defendants and ROES 1 - 500)**

111.   Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as

though set forth herein, including, without limitation, the agency and alter ego allegations.

112.   During Plaintiffs' discussions and negotiations with Defendants before each made an adult

1   video for Defendants (and simultaneous with Plaintiffs' attempted review of any purported

2   agreements), Defendants represented: they would not post the videos online (or cause such publication),

3   they would not distribute the videos in the United States (or cause such publication), and that Plaintiffs

4   would remain anonymous. Defendants further represented at all times to Plaintiffs that would not cause

5   the videos to be posted online or distributed in the United States. Defendants at all times assured

6   Plaintiffs there was nothing to worry about, promised privacy, and said nobody Plaintiffs knew would

7   see the videos. Defendants caused other women to reiterate these representations to Plaintiffs.

8   113.    The representations were false and although Defendants may have honestly believed that the

9   representations were true, they had no reasonable grounds for believing the representations were true

10   when they made them.

11   114.    Defendants intended that Plaintiffs would rely on the above representations in their decisions to

12   make the adult videos.

13   115.    Plaintiffs reasonably relied on Defendants' misrepresentations in their decisions to make the

14   adult videos.

15   116.    Plaintiffs' reliance on Defendants' false representations was a substantial factor in causing their

16   harm in that Defendants posted their videos online, published their videos in the United States, and

17   released Plaintiffs' names.

18   117.    Plaintiffs' reliance on these false representations was a substantial factor in causing their harm.

19   Plaintiffs have been harmed in an amount to be proven at trial, but that is, at least, $500,000 per

20   plaintiff, and consists of, at least, compensatory damages, including, but not limited to the difference in

21   value in what the parties exchanged (i.e., the money Plaintiffs received for what they were told was

22   *limited* distribution and what Defendants profited through *global* distribution).

23                              **FIFTH CAUSE OF ACTION**

24      **MISAPPROPRIATION OF NAME AND LIKENESS [COMMON LAW]**

25      **(JANE DOE NO. 15 against All Named Defendants and ROES 1 - 500)**

26   118.    Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as

27   though set forth herein, including, without limitation, the agency and alter ego allegations.

28   119.    Defendants used Plaintiffs' names, likenesses, and/or identities without Plaintiffs' permission,

                                        22
                              **COMPLAINT**

1    though fraud, and/or without promised consideration, including, without limitation, on Defendants'

2    websites (e.g., www.girlsdoporn.com), social media, and advertising. Finally, any release purporting to

3    give Defendants unconditional use of The Plaintiff's videos is unenforceable due to unclear terms, a

4    lack of mental capacity/competence, mistake, undue influence, and/or Defendants' unclean hands.

5    120.    Defendants' gained a commercial benefit by using Plaintiffs' names, likenesses, and/or

6    identities.

7    121.    Following Defendants' initial publication of each of Plaintiffs' videos on their own websites,

8    and through the date of this amended complaint, Defendants have republished and redirected the

9    misappropriated content to different websites and to different audiences. Defendants have republished

10    Plaintiffs' misappropriated likenesses to different audiences in various advertising campaigns on the

11    Internet, including on third party websites (such as www.pornhub.com and www.youporn.com), where

12    Defendants post varying and edited snippets of Plaintiffs' videos with embedded links and

13    advertisements to Defendants' websites; these varying and edited snippets of Plaintiffs' videos have

14    been viewed millions of times by hundreds of thousands of different individuals. Defendants conduct

15    the same form of repetitive mass advertising on their fan blogs and forums, and on their own social

16    media.

17    122.    Plaintiffs' reliance on these false representations was a substantial factor in causing their harm.

18    Plaintiffs have been harmed in an amount to be proven at trial, but that is, at least, $500,000 per

19    plaintiff, and consists of, at least: (a) serious emotional distress, including, but not limited to, bullying,

20    blackmail, loss of eating, loss of sleep, enduring fright, shock, nervousness, anxiety, depression,

21    embarrassment, mortification, shame, and fear; (b) compensatory damages, including, but not limited to

22    the difference in value in what the parties exchanged (i.e., the money Plaintiffs received for what they

23    were told was *limited* distribution and what Defendants profited through *global* distribution); and (c)

24    restitution / unjust enrichment damages (same calculation as the compensatory damages). The Plaintiff

25    also seek injunctive relief.

26    123.    Defendants also acted in a conspiracy when they committed this tort as: (1) each of Defendants

27    had knowledge of and agreed to both the objective and course of action to injure Plaintiffs; (2) pursuant

28    to their agreement, Defendants intentionally misappropriated Plaintiffs' names, likenesses, and/or

1  identities at the time and place and via the manner set forth above; and (3) pursuant to their agreement,

2  Defendants injured Plaintiffs, as set forth above.

3  124.    Defendants' actions were fraudulent, oppressive, and malicious and therefore also warrant an

4  award of punitive damages pursuant to Section 3294 of the California Civil Code.

5  ### SIXTH CAUSE OF ACTION

6  ### MISAPPROPRIATION OF LIKENESS [CIVIL CODE § 3344]

7  **(JANE DOE NO. 15 against All Named Defendants and ROES 1 - 500)**

8  125.    Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as

9  though set forth herein, including, without limitation, the agency and alter ego allegations.

10  126.    On their websites (e.g., www.girlsdoporn.com), social media, and other advertising, Defendants

11  knowingly used Plaintiffs' names, voices, photographs, video, and likenesses to advertise or sell

12  subscriptions to Defendants' businesses.

13  127.    Defendants' use did not occur in connection with a news, public affairs, or sports broadcast or

14  account, or with a political campaign.

15  128.    Defendants did not have Plaintiffs' consent, obtained it though fraud, and/or without promised

16  consideration.  Finally, any release purporting to give Defendants unconditional use of The Plaintiff's

17  videos is unenforceable due to unclear terms, a lack of mental capacity/competence, mistake, undue

18  influence, and/or Defendants' unclean hands.

19  129.    Defendants use of Plaintiffs' names, voices, photographs, video, and likenesses was directly

20  connected to Defendants' commercial purpose.

21  130.    Following Defendants' initial publication of each of Plaintiffs' videos on their own websites,

22  and through the date of this amended complaint, Defendants have republished and redirected the

23  misappropriated content to different websites and to different audiences.  Defendants have republished

24  Plaintiffs' misappropriated likenesses to different audiences in various advertising campaigns on the

25  Internet, including on third party websites (such as www.pornhub.com and www.youporn.com), where

26  Defendants post varying and edited snippets of Plaintiffs' videos with embedded links and

27  advertisements to Defendants' websites; these varying and edited snippets of Plaintiffs' videos have

28  been viewed millions of times by hundreds of thousands of different individuals.  Defendants conduct

1   the same form of repetitive mass advertising on their fan blogs and forums, and on their own social

2   media.

3   131.   Plaintiffs' reliance on these false representations was a substantial factor in causing their harm.

4   Plaintiffs have been harmed in an amount to be proven at trial, but that is, at least, $500,000 per

5   plaintiff, and consists of, at least: (a) serious emotional distress, including, but not limited to, bullying,

6   blackmail, loss of eating, loss of sleep, enduring fright, shock, nervousness, anxiety, depression,

7   embarrassment, mortification, shame, and fear; (b) compensatory damages and/or statutory damages,

8   including, disgorgement of profits; (c) attorney fees; and (d) restitution / unjust enrichment damages

9   (i.e., the money Plaintiffs received for what they were told was *limited* distribution and what

10  Defendants profited through *global* distribution).  The Plaintiff also seek injunctive relief.

11  132.   Defendants also acted in a conspiracy when they committed this tort as: (1) each of Defendants

12  had knowledge of and agreed to both the objective and course of action to injure Plaintiffs; (2) pursuant

13  to their agreement, Defendants intentionally misappropriated Plaintiffs' names, voices, photographs,

14  video, and likenesses at the time and place and via the manner set forth above; and (3) pursuant to their

15  agreement, Defendants injured Plaintiffs, as set forth above.

16  133.   Defendants' actions were fraudulent, oppressive, and malicious and therefore also warrant an

17  award of punitive damages pursuant to Section 3294 of the California Civil Code.

18                          **SEVENTH CAUSE OF ACTION**

19              **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

20          **(JANE DOE NO. 15 against All Named Defendants and ROES 1 - 500)**

21  134.   Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as

22  though set forth herein, including, without limitation, the agency and alter ego allegations.

23  135.   Defendants concealed the fact they run an online pornography website.  In order to get Plaintiffs

24  to make adult videos, Defendants lied to Plaintiffs about the distribution.  They assured Plaintiffs there

25  was nothing to worry about and promised privacy.  Defendants knew all of the other young women

26  whose lives they have irreparably damaged earlier by Defendants' video publication and promotion; all

27  of the other young women imploring them to stop and to take down their videos; and all of the

28  complaints and they (and their legal counsel) have received from other young women and their

                                            25

1  families. Defendants used Plaintiffs' videos and names to commercially promote their websites and
2  enrich themselves. This conduct was outrageous as it exceeded all bounds of common decency usually
3  tolerated by a civilized society.

4  136.    Defendants intended to inflict the injuries stated herein upon Plaintiffs, or the injuries were
5  substantially certain to result from Defendants' conduct.

6  137.    Defendants' outrageous conduct actually and proximately caused Plaintiffs to suffer serious
7  emotional distress, including, but not limited to, loss of eating, loss of sleep, enduring fright, shock,
8  nervousness, anxiety, depression, embarrassment, mortification, shame, fear, and – for some -
9  consideration of suicide. Plaintiffs have been harmed in an amount to be proven at trial, but that is, at
10  least, $500,000 per plaintiff.

11  138.    Defendants also acted in a conspiracy when they committed this tort as: (1) each of Defendants
12  had knowledge of and agreed to both the objective and course of action to injure Plaintiffs; (2) pursuant
13  to their agreement, with their outrageous conduct, Defendants intentionally inflicted severe emotional
14  distress upon Plaintiffs at the time and place and via the manner set forth above; and (3) pursuant to
15  their agreement, Defendants injured Plaintiffs, as set forth above.

16  139.    Defendants' actions were fraudulent, oppressive, and malicious and therefore warrant an award
17  of punitive damages pursuant to Section 3294 of the California Civil Code.

18  ## EIGHTH CAUSE OF ACTION

19  ## NEGLIGENCE

20  **(JANE DOE NO. 15 against All Named Defendants and ROES 1 - 500)**

21  140.    Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as
22  though set forth herein, including, without limitation, the agency and alter ego allegations.

23  141.    In their transactions and dealings with The Plaintiff, Defendants had a duty to use ordinary care
24  and to prevent injury to Plaintiffs based on the foreseeability of harm to Plaintiffs, the degree of
25  certainty The Plaintiff would suffer injuries, the closeness of connection between Defendants' actions
26  and Plaintiffs' injuries, the moral blame attached to Defendants' conduct, the policy of preventing
27  future harm, and the extent of Defendants' burden and the consequences to the community of imposing
28  duty and liability.

142.   Defendants' above-described actions and omissions (e.g., lying about and concealing the fact they run an online pornography website upon which they planned to post the videos; and assuring Plaintiffs there was nothing to worry about – all while knowing that release of the videos would cause harassment and severe emotional damage), breached the duty of care.

143.   Defendants' breach of the duty of care actually and proximately caused Plaintiffs harm in an amount to be proven at trial, but that is, at least, $500,000 per plaintiff, and consists of, at least: (a) serious emotional distress, including, but not limited to, bullying, blackmail, loss of eating, loss of sleep, enduring fright, shock, nervousness, anxiety, depression, embarrassment, mortification, shame, and fear; (b) compensatory damages, including, but not limited to the difference in value in what the parties exchanged (i.e., the money Plaintiffs received for what they were told was *limited* distribution and what Defendants profited through *global* distribution); and (c) restitution / unjust enrichment damages (same calculation as the compensatory damages).  The Plaintiff also seek injunctive relief.

## NINTH CAUSE OF ACTION

## BREACH OF CONTRACT

### (JANE DOE NO. 15 against All Named Defendants and ROES 1 - 500)

144.   Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as though set forth herein, including, without limitation, the agency and alter ego allegations.

145.   Plaintiffs entered into oral agreements with Defendants whereby Plaintiffs agreed to make their respective videos with the conditions: they would not post the videos online (or cause such publication), they would not distribute the videos in the United States (or cause such publication), and they would ensure their privacy and anonymity.

146.   Plaintiffs performed all of their obligations under the agreements; in particular, they participated in the video shoots.

147.   All conditions required for Defendants' performances occurred, but they breached the contract by distributing and/or causing the videos to be posted online and in the United States, and by failing to ensure Plaintiffs' privacy and anonymity.  Also, as set forth above, some of Plaintiffs did not receive the sums agreed upon for their video(s).

148.   As an actual and proximate cause of Defendants' breach, Plaintiffs were damaged in an amount

1  to be proven at trial, but believed to be, at least, $500,000 per plaintiff.

2  ## TENTH CAUSE OF ACTION

3  ## PROMISSORY ESTOPPEL

4  **(JANE DOE NO. 15 against All Named Defendants and ROES 1 - 500)**

5  149.   Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as

6  though set forth herein, including, without limitation, the agency and alter ego allegations.

7  150.   Defendants made clear and unambiguous promises to Plaintiffs that: they would not post the

8  videos online (or cause such publication), they would not distribute the videos in the United States (or

9  cause such publication), and they would ensure their privacy and anonymity.

10  151.   Plaintiffs relied on these promises in that they made the videos.

11  152.   Plaintiffs' reliance was both reasonable and foreseeable.

12  153.   Plaintiffs were injured as a result in that Defendants distributed or cause the distribution of the

13  videos online and in the United States, and failed to ensure Plaintiffs' privacy and anonymity.

14  154.   Injustice can be avoided only by an award of compensatory and consequential damages in the

15  amount of, at least, $500,000 per plaintiff.

16  ## ELEVENTH CAUSE OF ACTION

17  ## VIOLATION OF BUSINESS & PROFESSIONS CODE §§ 17200, et seq.

18  **(All Plaintiffs against All Named Defendants and ROES 1 - 500)**

19  155.   Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as

20  though set forth herein, including, without limitation, the agency and alter ego allegations.

21  156.   Defendants' conduct constitutes a "business practice" under Business & Professions Code,

22  Section 17200, et seq. ("Section 17200").

23  157.   Defendants' "business practice" constitutes "unlawful" conduct under Section 17200, as it

24  violates common and California statutory law.  Defendants' "business practice" constitutes

25  "fraudulent" conduct under Section 17200, as it deceives – and is likely to deceive – members of the

26  public.

27  158.   Defendants intended their conduct to cause – and it did so cause – Plaintiffs to suffer economic

28  injury in fact and caused Defendants to receive ill-gotten gains.  Plaintiffs were damaged – and

1   Defendants unjustly enriched - in an amount to be proven at trial, but believed to be, at least, $500,000

2   per plaintiff.  As such, Plaintiffs have individual standing under Section 17200.

3   159.    Pursuant to the remedies provisions of Section 17200: Defendants owe Plaintiffs restitution of

4   Plaintiffs' property (e.g., videos and images); the Court should enjoin Defendants' violative conduct;

5   and the Court should issue the maximum civil penalties permitted.

6                              **TWELFTH CAUSE OF ACTION**

7                                **FRAUDULENT TRANSFER**

8                **(All Plaintiffs against All The Named Defendants and ROES 475 - 550)**

9   160.    Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as

10  though set forth herein, including, without limitation, the agency and alter ego allegations.

11  161.    Plaintiffs have a right to payment from Defendants for the claims in this action and are, thus,

12  creditors.

13  162.    On information and belief, Defendants transferred Plaintiffs' videos and the revenue generated

14  therefrom to defendant Oh Well Media Limited, Sidle Media Limited and or Bubblegum Films, Ltd

15  (sham entities located in Vanuatu used to hide assets) and ROES 200 – 250 with the intent to hinder,

16  delay, or defraud Plaintiffs in their collection efforts on the subject claims.

17  163.    Plaintiffs were harmed as, among other things, they still have not received compensation for the

18  claims in this action.

19  164.    Defendants' conduct was a substantial factor in causing Plaintiffs' harm.

20  165.    Defendants' actions were fraudulent and malicious and therefore warrant an award of punitive

21  damages pursuant to Section 3294 of the California Civil Code.

22  ///

23  ///

24  ///

25

26

27

28

1

## **PRAYER FOR RELIEF**

2      WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

3      A.      For compensatory damages of, at least, $1,000,000.00;

4      B.      For restitution and disgorgement of ill-gotten gains/unjust enrichment;

5      C       For civil penalties;

6      D.      For an injunction;

7      E.      For punitive damages;

8      F.      For attorney fees;

9      G.      For prejudgment interest;

10     H.      For costs of suit; and

11     I.      For such other and further relief as the Court deems just and proper.

12

13     Date: September 7, 2017                     By: */s/ Brian M. Holm*

14                                                     Robert Hamparyan
                                                       John J. O'Brien
15                                                     Brian M. Holm
                                                       **Attorneys for Plaintiffs**
16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT